

Office of
**TOM ORLANDO**
Lorain County Clerk of Court of Common Pleas
Lorain County Justice Center, 225 Court St., 1st Floor, Elyria, OH  44035

## Public Docket Information

**WILLIAM BOBEL V/S SAFECO INSURANCE COMPANY OF INDIANA**     Case
Number: **17CV194101**

### Case Details

| | |
|---|---|
| Type Of Action: | Other Civil-CV |
| Judge: | Miraldi, Judge John |
| Filed On: | 12/21/2017 |

### Parties

| Name | Birth Date | Party | Address | Attorney(s) |
|---|---|---|---|---|
| BOBEL, WILLIAM | N/A | P | 803 6TH CT LORAIN, OHIO 44052 | O'BRIEN, GREGORY E CAVITCH,FAMILO,DURKIN & FRUTKIN 1300 EAST NINTH STREET, 20TH FL Cleveland, OHIO 44114 |
| SAFECO INSURANCE COMPANY OF INDIANA | N/A | D | 350 EAST 96TH ST INDIANAPOLIS, INDIANA 46240 | |

### Filter Docket

☐ Show All          ☐ FILING          ☐ REQUEST

Filter

| Date | Type | Description |
|---|---|---|
| 12/21/2017 | N/A | Filing fee of $300.00, paid by: CAVITCH FAMILO & DURKIN |
| 12/21/2017 | N/A | Receipt #: 17-0038684 Processed. |
| 12/21/2017 | FILING | COMPLAINT W/JURY DEMAND FILED. |
| 12/21/2017 | REQUEST | REQUEST FOR SERVICE FILED. |
| 12/27/2017 | N/A | SUMMONS W/COPY OF COMPLAINT SENT CERTIFIED MAIL TO: SAFECO INSURANCE COMPANY OF INDIANA ARTICLE #9414726699042088239513 |
| 01/17/2018 | N/A | Certified Mail Return : Article # : 9414726699042088239513, Delivered Date : 01/03/2018, Reason : Signed Receipt for Certified Mail Returned and Filed., Party : SAFECO INSURANCE COMPANY OF INDIANA, Note : |

**Print Docket     Close**

**EXHIBIT 1**

FILED
LORAIN COUNTY

2017 DEC 21 PM 12: 30

COURT OF COMMON PLEAS
TOM ORLANDO

IN THE COURT OF COMMON PLEAS
LORAIN COUNTY, OHIO

WILLIAM BOBEL
803 6th Ct.
Lorain, OH 44052-1727

    *Plaintiff,*

v.

SAFECO INSURANCE COMPANY OF INDIANA
350 East 96th St.
Indianapolis, IN 46240

    *Defendant.*

CASE NO.: **17 CV 194101**

JUDGE: **JUDGE JOHN R. MIRALDI**

**COMPLAINT**

Trial by Jury Demanded

---

Plaintiff William Bobel states for his complaint for breach of contract and declaratory judgment against Defendant Safeco Insurance Company of Indiana ("Safeco") as follows:

**Nature of the Action**

1.  Bobel brings this suit for common law breach of, and pursuant to Civ.R. 57 and Ohio R.C. 2721.01, et. seq., for declaratory judgment on the parties' rights and obligations under, Safeco Homeowners Policy No. OK6518171 (the "Policy").

2.  A true and accurate copy of the Policy is attached as Exhibit A.

**Parties, Jurisdiction, and Venue**

3.  Bobel is a resident of Lorain County, Ohio.

4.  Safeco is an Indiana corporation who lists its principal place of business with the Ohio Department of Insurance as Massachusetts, and on the Policy as Indiana.

5.  The Property is located in Lorain County, Ohio.

**EXHIBIT 1**

6.      The Policy was issued to Bobel in Lorain County, Ohio.

7.      The insurance claim that is the subject of this suit arose in Lorain County, Ohio.

**The Policy**

8.      Safeco issued the Policy to Bobel for a one year term commencing October 17, 2016 and effective through October 17, 2017.

9.      The Policy's Section I property coverages insured Bobel's single family residence located at 803 6th Ct., Lorain, Ohio (the "Property").

10.     Coverage A insured the dwelling located on the Property with replacement cost coverage limits of $363,500, subject to a $2,500 deductible.

11.     Coverage A covered the "residence premises" shown on the Policy Declarations "used as a private residence."

12.     Coverage A provided coverage for "accidental direct physical loss" to covered property.

13.     Coverage C insured Bobel's personal property located at or near the Property with replacement cost coverage limits of $181,750.

14.     Coverage C provided coverage for "personal property owned or used by an insured."

15.     Coverage C covered "accidental direct physical loss" to covered property caused by any of a list of specific perils, including "fire or lightning."

16.     Coverage D provided Additional Living Expense ("ALE") coverage with limits of $72,700; coverage D was not subject to a deductible.

2

EXHIBIT 1

17.     Coverage D provided coverage for any "necessary increase in the living expenses" incurred to maintain a "normal standard of living" when a covered loss renders the residence premises "uninhabitable."

18.     Coverage D also covers loss of rent, meaning rental income "from that part of the residence premises rented to others at the time of the loss," when a covered loss renders the residence premises "uninhabitable."

### The Property

19.     The Property was constructed in or around 1903.  A rear addition was added in or around 1923.

20.     Bobel purchased the Property on April 25, 2008.

21.     Over a period of years, Bobel gutted the Property to the interior studs and renovated it with new, high end fixtures, appliances and components, including new Pella brand windows, copper kitchen trim, and other high end improvements.

22.     In 2009, Bobel purchased a neighboring property and razed the existing structures on it in order to construct a large detached garage and workshop to serve the Property.

23.     By December 2016, the Property was fully renovated and was of the highest quality composition and construction.

24.     Bobel restored the Property with the intent of making it his permanent residence with the large, detached garage constructed on the adjoining parcel to be used as an office, warehouse and workshop for his electrical contracting business.

### The Lease

25.     On December 2, 2016 Bobel entered into an agreement to lease the Property to Cassandra Hope Prysaizny-Krassow (the "Lease").

3

EXHIBIT 1

26. A copy of the Lease is attached as Exhibit B.

27. The Lease was for a month to month term.

28. The Lease commenced on December 2, 2016.

29. The tenant agreed to pay Bobel $1,300 per month, payable in advance on the third day of each month.

30. Under the Lease, the tenant was to take possession of the Property on January 1, 2017.

31. Bobel was contractually permitted to reside in the Property until January 1, 2017 and did reside in it until it was destroyed in a fire.

**The Fire**

32. On December 25, 2016 an accidental fire occurred at the Property (the "Fire").

33. The Fire caused extensive damage and direct physical loss to the Property, including the dwelling on the residential premises, and the fixtures, furnishings, appliances and components within it.

34. The Fire caused extensive damage and direct physical loss to Bobel's personal property.

35. The Fire rendered the Property, including the residence premises, uninhabitable.

36. The Fire prevented the tenant from taking possession on January 1, 2017.

37. The Fire resulted in an ongoing loss of rental income to Bobel.

**The Claim**

38. Bobel promptly notified Safeco of the Fire and presented a claim for the damages and losses incurred as a result (the "Claim").

4

EXHIBIT 1

39.     In support of his Claim under Coverage A of the Policy, Bobel submitted a repair estimate from a respected local general contracting firm indicating that the total estimated cost of restoring the Property from the damage done by the Fire was $344,980.00.

40.     A copy of the contractor's estimate is attached as Exhibit C.

41.     In support of his Claim under Coverage A of the Policy, Bobel submitted an estimate from a respected local structural engineering firm indicating that the total estimated cost to repair the structural damage to the Property resulting from the Fire was $274,500.00.

42.     A copy of the engineer's estimate is attached as Exhibit D.

43.     Bobel submitted other documents, correspondence and information in support of the Claim under Coverages A, C and D of the Policy.

44.     Bobel permitted Safeco, its employees, contractors and agents access to the Property as requested, completed required paperwork and responded to other inquiries as requested.

45.     Bobel fully cooperated in Safeco's investigation of the Fire and the Claim.

### The Adjustment of the Claim

46.     Safeco determined that the Replacement Cost for the damage to the Property resulting from the Fire covered under Coverage A was $179,563.91.

47.     Safeco deducted from the Replacement Cost depreciation of $26,204.34 and the $2,500 Policy deductible.

48.     Safeco has paid Bobel $150,859.57 under the Policy's Coverage A for the damage to the Property caused by the Fire.

49.     Safeco has paid Bobel on an Actual Cash Value basis for some items of personal property damaged in the Fire.

EXHIBIT 1

50.     Safeco has paid Bobel on a Replacement Cost basis for other items of personal property lost or damaged in the Fire.

51.     Safeco has failed to pay Bobel at all for other items of personal property lost or damaged in the Fire.

52.     Safeco denied Bobel's claim for ALE under Coverage D of the Policy, including Bobel's Claim for lost rents under the Lease.

53.     A copy of Safeco's letter denying Bobel's ALE claim is attached as Exhibit E.

### Damages

54.     Bobel has been damaged by Safeco's failure to perform its obligations under the Policy, including under Coverages A and C by payment in amounts significantly less than the amounts owed.

55.     Bobel has been damaged by Safeco's failure to perform its obligations under the Policy, including its refusal to pay ALE and lost rents under Coverage D.

56.     As a result of Safeco's failure to honor its obligations under the Policy, Bobel has been unable to commence repair or renovation of the Property.

57.     As a result of Safeco's failure to honor its obligations under the Policy, the condition of the Property has deteriorated, resulting in additional cost and damage to Bobel.

58.     As a result of Safeco's failure to honor its obligations under the Policy, Bobel has been deprived of the use of the Property.

59.     As a result of Safeco's failure to honor its obligations under the Policy, Bobel has been deprived of income that could have been generated by the Property.

60.     As a result of Safeco's failure to honor its obligations under the Policy, Bobel has incurred other damages associated with the physical loss of and damage to the Property, Bobel's

6

EXHIBIT 1

loss of use of the Property, the damage to and loss of use of Bobel's personal property, and the uninhabitable condition of the Property and resulting loss of rental income.

### Grounds for Declaratory Judgment

61. An actual case or controversy exists between Bobel and Safeco in connection with the payments owed under the Policy.

62. Speedy and effective relief is necessary to preserve Bobel's rights.

63. A declaratory judgment establishing the rights, status and other legal relations of the parties would terminate the controversy between the parties.

64. All persons who have any claims or interests in the subject matter of this action and who would be affected by the requested declaratory relief are parties to this action.

65. Bobel is entitled to declaratory relief under Ohio law.

### Count I – Breach of Contract

66. The Policy constitutes a contract between Bobel as the insured and Safeco as the insurer.

67. Bobel performed all obligations of the insured under the Policy.

68. Safeco breached the contract by refusing to pay the full amount owed under Coverages A and C of the Policy.

69. Safeco breached the contract by denying Bobel's claim for ALE including lost rents under Coverage D of the Policy.

70. As a result of Safeco's breach, Bobel has suffered damages in excess of $25,000.

### Count II -- Claim for Declaratory Judgment

71. Under the facts of the Claim, the Policy clearly and unambiguously affords Bobel coverage for ALE including lost rents incurred as a result of the Fire.

7

EXHIBIT 1

72.     Alternatively, given the facts of the Claim, the Policy is ambiguous as to whether Bobel is entitled to ALE, including lost rents as a result of the Fire.

73.     Safeco has interpreted the Policy's Coverage D as applied to the facts of the Claim in a way that favors its own interests above those of its insured.

74.     Safeco has rejected the interpretation of Coverage D most favorable to Bobel.

75.     Bobel is entitled to a declaration of the parties' rights under the Policy, and specifically to a finding that under the facts of the Claim, Bobel is entitled to ALE under Coverage D of the Policy, including lost rents resulting from the Fire.

### Prayer for Declaratory Judgment

WHEREFORE, William Bobel requests the Court to enter judgment in his favor and against Defendant Safeco and to specifically:

1.      Award compensatory damages on Count I of this complaint in an amount in excess of $25,000, the exact amount to be determined by the jury at trial.

2.      To enter declaratory judgment for Bobel on Count II of this complaint and declare that Bobel is entitled to ALE under Coverage D of the Policy, including lost rents.

3.      To award reasonable attorneys' fees and litigation expenses, the cost of this action, and any other relief which the Court deems just and proper.

Respectfully submitted,

Gregory E. O'Brien (0037073)
CAVITCH FAMILO & DURKIN CO., LPA
Twentieth Floor
1300 East Ninth Street
Cleveland, Ohio 44114
Telephone (216) 621-7860
Facsimile (216) 621-3415
gobrien@cavitch.com
*Attorneys for Plaintiff*

8

EXHIBIT 1

## JURY DEMAND

Plaintiff respectfully requests a Jury in the maximum number allowed by law at the time of the Trial of this matter on any disputed issue of material fact.

## INSTRUCTIONS FOR SERVICE

To the Clerk: Please serve a summons and a copy of the foregoing COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT on the Defendant at the address listed in the caption by certified mail or by any other method authorized under the Ohio Rules of Civil Procedure.

Gregory E. O'Brien
*One of the Attorneys for Plaintiff*

9

EXHIBIT 1

DCN: 22261360408923660403411005 C   Received Date: 01/08/2018



**A Liberty Mutual Company**

# Your Insurance Policy

EXHIBIT 1

CN-15 4/12

**Safeco Insurance™**
A Liberty Mutual Company

## SAFECO INSURANCE COMPANY OF INDIANA
Home Office: 350 East 96th St, Indianapolis, IN 46240 (A stock insurance company.)
### HOMEOWNERS POLICY DECLARATIONS

**POLICY NUMBER:**
OK6518171

**POLICY PERIOD: FROM: OCT. 17, 2016 12:01 A.M.**
**TO: OCT. 17, 2017 12:01 A.M.**

**NAMED INSURED AND MAILING ADDRESS:**
WILLIAM BOBEL
803 6TH CT
LORAIN OH 44052-1727

**AGENT:**
ROBERT TAYLOR COMPANIES
2063 N RIDGE RD E
LORAIN OH 44055-3413

**Valued Homeowners Customer Since: OCT. 17, 2016**

**INSURED LOCATION:**
Same

**POLICY SERVICE INFORMATION:**
TELEPHONE: (440) 277-5191
E-MAIL: SAVE@ROBERTTAYLORINSURANCE.COM
WEBSITE: www.roberttaylorinsurance.com

### IMPORTANT MESSAGES

- Your new policy is effective October 17, 2016.

### LIMITS OF LIABILITY
(Policy Section I - Property Coverages and Section II - Liability Coverages)

| Coverage A — Dwelling | Coverage B — Other Structures | Coverage C — Personal Property | Coverage D — Additional Living Expense | Coverage E — Personal Liability | Coverage F — Medical Payments |
|---|---|---|---|---|---|
| $363,500 | $150,000 | $181,750 | $72,700 | $100,000 | $1,000 |

**DEDUCTIBLES.**
The following deductibles apply unless otherwise stated within the policy.

| | AMOUNT |
|---|---|
| Section I - Property Coverages | $ 2,500 |

| | | PREMIUM |
|---|---|---|
| BASIC COVERAGES | $ | 1,461.00 |
| OTHER COVERAGES, LIMITS AND OPTIONAL COVERAGES | $ | 0.00 |
| DISCOUNTS AND SURCHARGES | $ | -228.00 |
| **TOTAL POLICY PREMIUM** | $ | 1,233.00 |

**Premium Payer: Insured**

You may pay your premium in full or in installments. There is no installment fee for the following billing plans: Full Pay. Installment fees for all other billing plans are listed below. If more than one policy is billed on the installment bill, only the highest fee is charged. The fee is:
$2.00 per installment for recurring automatic deduction (EFT)
$5.00 per installment for recurring credit card or debit card
$5.00 per installment for all other payment methods

Servicing Mortgagee
LORAIN NATIONAL BANK
ISAOA / ATIMA
457 BROADWAY AVE
LORAIN OH 44052



ORIGINAL
DATE PREPARED: OCT. 17 2016

HOM-7000/EP 1/09
G2

**EXHIBIT 1**

# SAFECO INSURANCE COMPANY OF INDIANA
## HOMEOWNERS POLICY DECLARATIONS

CONTINUED                    **POLICY NUMBER:  OK6518171**

**POLICY LIMITS AND OTHER ADDITIONAL COVERAGES**
(Unless otherwise stated, all limits and coverages are included in basic coverages)
   COVERAGE LEVEL: ESSENTIAL
SECTION I - PROPERTY COVERAGES
COVERAGE C - PERSONAL PROPERTY - 3. SPECIAL LIMITS OF LIABILITY

| | | |
|---|---|---|
| a.Money, pre-paid cards... | $ 250 | h.Business Property |
| b.Rare coins and currency... | $ 500 | On Premises... $ 3,000 |
| c.Securities, debit cards... | $ 500 | Off Premises Sub-limit $ 1,000 |
| d.Watercraft... | $ 3,000 | i.Tapes, records, discs... $ 500 |
| e.Trailers... | $ 3,000 | j.Theft of rugs... $ 5,000 |
| f.Theft of jewelry, watches... | $ 500 | k.Grave Markers... $ 500 |
| g.Theft of silverware... | $ 500 | |

| OTHER INCLUDED COVERAGES/POLICY PROVISIONS | Limit | Premium |
|---|---|---|
| Loss Assessment Coverage | $ 500 | Included |
| Building Ordinance or Law Coverage ( 10%) | $ 36,350 | Included |
| Fungi, Wet or Dry Rot, or Bacteria | $ 5,000 | Included |
| Reasonable Repairs | $ 5,000 | Included |
| Fire Department Service Charge | $ 500 | Included |
| Land Stabilization | $ 5,000 | Included |
| Arson Reward | $ 25,000 | Included |
| Criminal Conviction Reward - Item a. Information | $ 2,500 | Included |
| Criminal Conviction Reward - Item b. Property Recovery | $ 5,000 | Included |
| Credit Card, Fund Transfer, Forgery & Counterfeit Money | $ 500 | Included |
| Volunteer America | | Included |
| Section I (All Perils Coverage) | | Included |
| Section II - Liability Coverage | | Included |
| Section II - Property Damage | $ 2,000 | Included |

| OPTIONAL COVERAGES | Limit | Premium |
|---|---|---|
| Personal Property Replacement Cost | | Included |
| Extended Dwelling Coverage | Up to 25% | Included |

| DISCOUNTS AND SURCHARGES | | Premium |
|---|---|---|
| Advance Quote Discount | $ | -228.00 |

For information on other deductibles, coverages or discounts available in your state
or to review your account online, log on to www.safeco.com

**FORMS APPLICABLE TO THIS POLICY**

```
HOM-7301/EP 1/09    - PERSONAL PROPERTY REPLACEMENT COST
HOM-7100/OHEP 8/15  - SPECIAL PROVISIONS - OHIO
HOM-7030/EP 1/09    - HOMEOWNERS POLICY
HOM-7232/EP 1/09    - EXECUTION CLAUSE
HOM-7300/EP 1/12    - EXTENDED DWELLING COVERAGE
```

EXHIBIT 1

 Insurance.
A Liberty Mutual Company

# SAFECO HOMEOWNERS POLICY

## Table of Contents

| | Beginning On Page |
|---|---|
| INSURING AGREEMENT | 1 |
| SECTION I — PROPERTY COVERAGES | 1 |
| COVERAGE A — DWELLING | 1 |
| COVERAGE B — OTHER STRUCTURES | 1 |
| Building Property We Cover | 1 |
| Building Property We Do Not Cover | 1 |
| Building Property Losses We Cover | 1 |
| Building Property Losses We Do Not Cover | 1 |
| COVERAGE C — PERSONAL PROPERTY | 4 |
| Personal Property We Cover | 4 |
| Personal Property We Do Not Cover | 5 |
| Personal Property Losses We Cover | 6 |
| Personal Property Losses We Do Not Cover | 7 |
| COVERAGE D — ADDITIONAL LIVING EXPENSE AND LOSS OF RENT | 7 |
| ADDITIONAL PROPERTY COVERAGES | 8 |
| PROPERTY CONDITIONS | |
| Deductible | 11 |
| Your Duties | 11 |
| Loss Settlement | 12 |
| SECTION II — LIABILITY COVERAGES | |
| COVERAGE E — PERSONAL LIABILITY AND COVERAGE F — MEDICAL PAYMENTS TO OTHERS | |
| Liability Losses We Cover | 14 |
| Liability Losses We Do Not Cover | 15 |
| ADDITIONAL LIABILITY COVERAGES | 19 |
| LIABILITY CONDITIONS | 20 |
| SECTIONS I AND II — PROPERTY AND LIABILITY CONDITIONS | |
| Policy Period and Changes | 22 |
| Concealment or Fraud | 22 |
| Liberalization Clause | 22 |
| Cancellation | 22 |
| Non-Renewal | 23 |
| Assignment | 23 |
| Our Right to Recover Payment | 23 |
| Death | 23 |
| POLICY DEFINITIONS | 23 |

HOM-7030/EP 1/09
G2

EXHIBIT 1

0600000800025000000000307566656616

8397

# INSURING AGREEMENT

In reliance on the information you have given us, we will pay claims and provide coverage as described in this policy if you pay the premiums when due and comply with all the applicable provisions outlined in this policy.

This policy applies only to losses occurring during the policy period.

# SECTION I — PROPERTY COVERAGES

## BUILDING PROPERTY WE COVER

### COVERAGE A — DWELLING

We cover:

1. the dwelling on the *residence premises* shown in your Policy Declarations used principally as a private residence, including structures attached to the dwelling other than fences, driveways or walkways;
2. attached carpeting, built-in appliances, fixtures; and
3. materials and supplies located on or next to the *residence premises* used to construct, alter or repair the dwelling or other structures on the *residence premises.*

### COVERAGE B — OTHER STRUCTURES

We cover:

1. fences, driveways and walkways; and
2. other structures on the *residence premises*, separated from the dwelling by clear space. This includes retaining walls, decorative or privacy walls and other structures connected to the dwelling by only a fence, utility line, plumbing, or similar connection.

## BUILDING PROPERTY WE DO NOT COVER

1. Land, no matter where it is located, including land on which the dwelling is located, except as noted in **Additional Property Coverages, Land Stabilization.**
2. Other structures:
   a. used in whole or in part for business; or
   b. rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private residence or garage.

## BUILDING PROPERTY LOSSES WE COVER

We cover accidental direct physical loss to property described in Building Property We Cover except as limited or excluded.

## BUILDING PROPERTY LOSSES WE DO NOT COVER

We do not cover loss caused directly or indirectly by any of the following excluded perils. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area;

1. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing, while the dwelling is vacant, unoccupied or under construction, including being newly built, remodeled, reconstructed, renovated or repaired. This provision does not apply if you have used reasonable care to:
   a. maintain heat in the building; or



HOM-7030/EP 1/09

- 1 -



Exhibit A---005

EXHIBIT 1

b. shut off the water supply and drain the system and appliances of water;

2. freezing, thawing, pressure or weight of water, ice or snow whether driven by wind or not, to a swimming pool, hot tub or spa, including their filtration and circulation systems, fence, landscape sprinkler system, pavement, patio, foundation, retaining wall, decorative or privacy wall, bulkhead, pier, wharf or dock;

3. theft in, to or from a dwelling under construction, including materials and supplies for use in the construction, until or unless the dwelling is occupied. A dwelling under construction includes being newly built, remodeled, reconstructed, renovated or repaired. This exclusion does not apply if you are occupying the dwelling as your primary residence at the time of the loss;

4. vandalism and malicious mischief, including fire caused by arson, or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling under construction, including being newly built, remodeled, reconstructed, renovated or repaired is not considered vacant.

5. continuous or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor which occurs over a period of weeks, months or years.

6. a. wear and tear, marring, scratching, deterioration;

b. inherent defect, mechanical breakdown;

c. smog, rust or other corrosion, or electrolysis;

d. smoke from agricultural smudging or industrial operations;

e. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs, ceilings, swimming pools, hot tubs, spas or chimneys;

f. birds, vermin, rodents, insects or domestic animals;

g. pressure from or presence of plant roots.

However, we do insure for any resulting loss from items **1.** through **6.** unless the resulting loss is itself excluded under **Building Property Losses We Do Not Cover** in this Section. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which water or steam escaped.

7. **Pollution or Contamination,** meaning the existence of or the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, emission, transmission or absorption of *pollutants or contaminants* at any time except as provided by **Additional Property Coverages — Household Products Coverage** under **Section I — Property Coverages.**

8. **Ordinance or Law,** meaning any ordinance or law:

a. requiring or regulating the construction, remodeling, renovation, repair, or demolition of building property, including removal of resulting debris, unless specifically provided under this policy;

b. the requirements of which result in a loss in value to property; or

c. requiring any *insured* or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, *pollutants or contaminants.*

This exclusion applies whether or not the building property has been physically damaged.

9. **Earth Movement,** meaning:

a. the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to *earthquake,* landslide, mudflow, mudslide, sinkhole, subsidence, movement resulting from improper compaction, site selection or any other external forces, erosion including collapse or subsidence of land along a body of water as a result of erosion or undermining resulting from the action of water. This includes the channeling or diverting of a river or stream;

b. erosion, shifting or displacement of materials supporting the foundation; and

c. volcanic blast, volcanic explosion, shockwave, lava flow, lahars and fallout of volcanic particulate matter.

This exclusion applies whether the earth movement is caused by or resulting from human or animal forces or any act of nature.

Exhibit A---006
EXHIBIT 1

We do cover direct loss by fire, explosion or theft.

10. **Water Damage,** meaning:

   a. (1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, storm surge or spray from any of these, whether or not driven by wind, including hurricane or similar storm; or

   (2) release of water held by a dam, levee, dike or by a water or flood control device or structure;

   b. water below the surface of the ground, including that which exerts pressure on, or seeps or leaks through a building, wall, bulkhead, sidewalk, driveway, foundation, swimming pool, hot tub or spa, including their filtration and circulation systems, or other structure;

   c. water which escapes or overflows from sewers or drains located off the *residence premises;*

   d. water which escapes or overflows from drains or related plumbing appliances on the *residence premises.* However, this exclusion does not apply to overflow and escape caused by malfunction on the *residence premises,* or obstruction on the *residence premises,* of a drain or plumbing appliance on the *residence premises;* or

   e. water which escapes or overflows or discharges, for any reason, from within a sump pump, sump pump well or any other system designed to remove water which is drained from the foundation area.

   Water includes any water borne materials.

   This exclusion applies whether the water damage is caused by or resulting from human or animal forces or any act of nature.

   Direct loss by fire, explosion or theft resulting from water damage is covered.

11. **Power Interruption,** meaning the failure of power or other utility service if the failure takes place off the *residence premises.* If any **Building Property Losses We Cover** ensues on the *residence premises,* we will pay only for the ensuing loss.

12. **Neglect,** meaning your failure to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

13. Loss caused directly or indirectly by war, including the following and any consequence of any of the following:

   a. undeclared war, civil war, insurrection, rebellion, or revolution;

   b. warlike act by a military force or military personnel; or

   c. destruction or seizure or use for a military purpose.

   Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

14. **Nuclear Hazard,** meaning nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether or not one of the forces initiating or contributing to these nuclear hazards is covered within the losses we cover in Section I except direct loss by fire resulting from the nuclear hazard is covered.

15. **Intentional Loss,** meaning any loss arising out of any act committed:

   a. by or at the direction of any *insured;*

   b. with the intent to cause a loss.

   This exclusion does not apply to an otherwise covered property loss if the property loss is caused by an act of domestic abuse by another *insured* under the policy provided:

   c. the *insured* claiming a property loss files a police report and cooperates with any law enforcement investigation relating to the act of domestic abuse; and

   d. the *insured* claiming a property loss did not cooperate in or contribute to the creation of the property loss.

   Payment pursuant to this provision shall be limited to the insurable interest in the property of the *insured* claiming a property loss, less payments made pursuant to **Section I — Property Conditions, Mortgage Clause.**



HOM-7030/EP 1/09                             - 3 -


EXHIBIT 1

e.  For purposes of this provision, "domestic abuse" means:

(1)  physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or household members;

(2)  sexual assault of one family or household member by another;

(3)  stalking of one family or household member by another family or household member; or

(4)  intentionally, knowingly, or recklessly causing damage to property so as to intimidate or attempt to control the behavior of another family or household member.

16.  **Acts or Decisions,** including the failure to act or decide, of any person, group, organization or governmental body. However, any ensuing loss not excluded is covered.

17.  **Weather** that contributes in any way with a cause or event not covered in this section to produce a loss. However, any ensuing loss caused by a covered peril and not otherwise excluded is covered.

18.  **Planning, Construction or Maintenance,** meaning faulty, inadequate or defective:

a.  planning, zoning, development, surveying, siting;

b.  design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

c.  materials used in repair, construction, renovation or remodeling; or

d.  maintenance;

of property whether on or off the *insured location* by any person or organization. However, any ensuing loss not excluded is covered.

19.  *Fungi,* **Wet or Dry Rot, or Bacteria** meaning the presence, growth, proliferation or spread of *fungi,* wet or dry rot, or bacteria. This exclusion does not apply to the extent coverage is provided for under **Additional Property Coverages — *Fungi,* Wet or Dry Rot, or Bacteria in Section I — Property Coverages.**

20.  **Collapse,** except as provided under **Additional Property Coverages — Collapse in Section I — Property Coverages.** However, any ensuing loss caused by a covered peril and not otherwise excluded is covered.

---

## PERSONAL PROPERTY WE COVER

### COVERAGE C — PERSONAL PROPERTY

1.  Personal property owned or used by any *insured* is covered while it is anywhere in the world. When personal property is usually located at an *insured's* residence, other than the *residence premises,* coverage is limited to 10% of the Coverage C limit. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days immediately after you begin to move the property there.

During the time the *residence premises* is under construction by or for the *insured,* our limit of liability for personal property other than on the *residence premises* shall be equal to the amount specified for Coverage C. Our total limit shall not exceed the policy limit for Coverage C in any one loss.

2.  At your request we cover:

a.  personal property owned by others while the property is on that part of the *residence premises* occupied exclusively by any *insured;*

b.  personal property owned by a guest or a *residence employee,* while the property is at any residence occupied by any *insured.*

3.  **SPECIAL LIMITS FOR PERSONAL PROPERTY**

The following groups of personal property are covered only up to the special limit shown on your Policy Declarations page. The special limit is the total amount available for each group for any one loss and does not increase the Coverage C limit. The loss of, or damage to, more than one item in a group arising from the same cause or event is considered one loss.

a.  Money, pre-paid cards or passes, monetary value carried on electronic chip or magnetic cards, bank notes, bullion, gold other than goldware, silver other than silverware and platinum.

HOM-7030/EP 1/09                                    - 4 -

b. Rare coins and currency, medals, stamps, trading cards and comic books, including any of these that are part of a collection.

c. Securities, debit cards, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets, personal documents, and records or data.

The dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

The limit includes the cost to research, replace or restore the material from the lost or damaged medium.

d. Watercraft, including their trailers, furnishings, equipment and outboard motors.

e. Trailers not used with watercraft.

f. Theft of jewelry, watches, furs, precious and semiprecious stones.

g. Theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware.

Silverware, goldware and pewterware include:

(1) plateware, flatware, hollowware, tea sets, trays, trophies and the like;

(2) other utilitarian items made of or including silver or gold; and

(3) all items of pewterware.

h. *Business* property, not excluded elsewhere, while located on the *residence premises.* Up to $1,000 of the limit on your Policy Declarations may be used for *business* property, not excluded elsewhere, while located off the *residence premises.*

i. Tapes, records, discs or other media in a motor vehicle or other motorized land conveyance on or away from the *residence premises.*

j. Theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article.

k. Grave markers.

## PERSONAL PROPERTY WE DO NOT COVER

1. Articles separately described and specifically insured, regardless of insured limit, in this or any other insurance.

2. Animals, birds or fish.

3. Motorized land vehicles including their equipment, parts and accessories while in or upon the vehicle.

However, we do cover:

a. motorized land vehicles used solely to service the *residence premises* and not subject to motor vehicle registration or licensed for road use;

b. vehicles designed for the handicapped and not licensed for road use;

c. up to $500 for disassembled parts of a motorized land vehicle while located on the *residence premises;* or

d. up to $500 for electric motorized ride-on vehicles designed to be operated by children under the age of eight and designed for speeds of less than six miles per hour.

4. Electronic apparatus, including their accessories and antennas, designed to be operated solely by power from the electrical system of a motor vehicle. This exclusion applies only while such property is in or upon a motor vehicle.

5. Aircraft, including disassembled parts of aircraft. This exclusion does not apply to model aircraft. Any aircraft designed for carrying persons or cargo is not a model aircraft.

6. Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles.

HOM-7030/EP 1/09 - 5 -

Exhibit A---009

EXHIBIT 1



7. Property of roomers, boarders, tenants and other residents not related to any *insured.*

8. Property in a location on the *residence premises,* when the location is rented or held for rental to others by any *insured* for more than 31 days in a calendar year. This exclusion does not apply to property of an *insured* in a sleeping room rented to others by an *insured* on the *residence premises.*

9. Property, away from the *residence premises,* rented or held for rental to others.

10. *Business* property or merchandise:

   a. in storage;

   b. held as a sample; or

   c. held for sale or delivery after sale.

11. *Business* documents, records or data regardless of the medium on which they exist. However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market.

## PERSONAL PROPERTY LOSSES WE COVER

We cover accidental direct physical loss to property described in **Coverage C — Personal Property** caused by a peril listed below except as limited or excluded.

1. **Fire or lightning.**

2. **Windstorm or hail.**

   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard motors, only while inside a building with:

   a. continuous walls on all sides extending from ground level to the roof;

   b. doors and windows in the walls at various locations; and

   c. a continuous roof sheltering all areas within the wall perimeter.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles,** meaning impact by, or with, or upset of, a vehicle.

7. **Smoke,** meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging *or* industrial operations, including slash burns.

8. **Vandalism or malicious mischief.**

9. **Theft,** including attempted theft and loss of property from a known location when it is likely that the property has been stolen.

   This peril does not include loss caused by theft:

   a. committed by any *insured* or by any other person regularly residing on the *insured location;*

   b. in, to or from a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

   c. from that part of a *residence premises* rented by any *insured* to other than an *insured.*

   This peril does not include loss caused by theft that occurs away from the *residence premises* of property while at any other residence owned, rented to, or occupied by any *insured,* except while an *insured* is temporarily residing there.

   Property of a student who is an *insured* is covered while at a residence away from home.

HOM-7030/EP 1/09                                          - 6 -

Exhibit A—010

EXHIBIT 1

10. **Falling objects.**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a. to the appliance or system from which the water or steam escaped;

b. caused by or resulting from freezing except as provided in the peril of freezing below; or

c. on the *residence premises* caused by accidental discharge or overflow which occurs off the *residence premises*.

For purposes of coverage under this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

13. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include loss on the *residence premises* while the dwelling is vacant, unoccupied or under construction, including being newly built, remodeled, reconstructed, renovated or repaired, unless you have used reasonable care to:

a. maintain heat in the building; or

b. shut off the water supply and drain the system and appliances of water.

For purposes of coverage under this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

15. **Sudden and accidental damage from artificially generated electrical current.**

16. **Breakage of glass,** meaning damage to personal property caused by breakage of glass which is a part of a building on the *residence premises*. There is no coverage if breakage of glass is caused by *earthquake*. There is no coverage for loss or damage to the glass.

## PERSONAL PROPERTY LOSSES WE DO NOT COVER

We do not cover loss caused directly or indirectly by any of the **Building Property Losses We Do Not Cover.** Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

## COVERAGE D — ADDITIONAL LIVING EXPENSE AND LOSS OF RENT

1. If a loss covered under this Section makes that part of the *residence premises* where you reside uninhabitable we cover **Additional Living Expense,** meaning the necessary increase in living expenses you incur so that your household can maintain its normal standard of living.

Payment shall be for the shortest time required, not exceeding 24 months, to repair or replace the damage or to permanently relocate.

2. If a loss covered under this Section makes that part of the *residence premises* you rent to others or hold for rental uninhabitable, we cover your loss of rent, meaning the rental income to you from that part of the *residence premises* you rent to others at the time of the loss, less any expenses that do not continue while the premises is uninhabitable.

HOM-7030/EP 1/09                                    -7-

This coverage does not apply to:

a. The *residence premises* or that part of the *insured location* that is not rented or leased to a tenant at the time of the loss; or

b. to any increase in rent or lease payment that occurs after the time of the loss.

Payment shall be for the shortest time required to repair or replace the damage, but not to exceed 24 months.

3. If a civil authority prohibits you from use of the *residence premises* as a result of direct damage to neighboring premises by a cause of loss we cover in this policy we cover the **Additional Living Expense** as provided under 1., above for no more than two weeks during which use is prohibited.

The total limit of liability available for **Additional Living Expense** and **Loss of Rent** is stated on your Policy Declarations page and is the most we will pay for all loss or costs under 1., 2. and 3., above.

The periods of time under 1., 2. and 3. above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

No deductible applies to this coverage.

## ADDITIONAL PROPERTY COVERAGES

The following **Additional Property Coverages** are subject to all the terms, provisions, exclusions, and conditions of this policy.

1. **Debris Removal.** We will pay the reasonable expense you incur in the removal of debris of covered property provided coverage is afforded for the peril causing the loss. Debris removal expense is included in the limit of liability applying to the damaged property. When the amount payable for the actual damage to the property plus the expense for debris removal exceeds the limit of liability for the damaged property, an additional 5% of that limit of liability will be available to cover debris removal expense.

   We will also pay the reasonable expenses you incur, up to $500, for the removal of trees from the *residence premises*, provided the trees damage **Building Property We Cover**. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

2. **Reasonable Repairs.** We will pay up to the amount stated in your Policy Declarations for the reasonable cost you incur for necessary repairs made solely to protect covered property from further damage, following a covered loss. This coverage does not increase the limit of liability applying to the property being repaired.

3. **Trees, Shrubs and Other Plants.** We cover, as an additional amount of insurance, trees, shrubs, plants or lawns, on the *residence premises*, for loss caused by the following perils: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the *residence premises*, Vandalism or Malicious mischief and Theft.

   We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants and lawns. No more than $500 of this limit will be available for any one tree, shrub or plant.

4. **Fire Department Service Charge.** We will pay, up to the amount stated in your Policy Declarations, as an additional amount of insurance, for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a loss we cover.

   We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a loss we cover. We will cover this property for a maximum of 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6. **Land Stabilization.** We will pay up to the amount stated in your Policy Declarations for the cost required to replace, rebuild, stabilize or otherwise restore the land necessary to support the insured dwelling or other structures sustaining a covered loss. This is an additional amount of insurance.

Exhibit A—012
EXHIBIT 1

7. **Building Ordinance or Law Coverage.** We will pay for damage to **Building Property We Cover** resulting from a covered cause of loss in compliance with any ordinance or law that regulates the construction, repair or demolition of the property.

This coverage does not apply unless you choose to repair or rebuild your property at its present location.

We do not cover:

a. the loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

b. the costs to comply with any ordinance which requires any *Insured* or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, *pollutants or contaminants.* However, for purposes of **Building Ordinance or Law Coverage,** *pollutants or contaminants* shall not include asbestos or materials containing asbestos.

You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated above.

The limit of liability shown in your Policy Declarations is the most we will pay for the total of all loss or costs for **Building Property We Cover,** regardless of the number of locations or number of claims made.

This is an additional amount of insurance.

8. **Arson Reward.** We will pay up to the amount stated in your Policy Declarations for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable.

However, we will not pay more than the amount stated in your Policy Declarations per event regardless of the number of persons providing information.

9. **Household Products Coverage.** We cover direct physical loss to the property described in Coverages A and B arising out of a discharge, dispersal, spill, leak, release, escape, emission, transmission or absorption of household products on the *residence premises.* Household products include items currently in use or your possession at the *residence premises* in normal household quantities such as paint, paint thinners, soaps, bleach, pesticides, herbicides, motor oil, gasoline, heating fuel and similar items. For purposes of this coverage, household products do not include materials containing asbestos, lead or formaldehyde.

We will pay up to 5% of the Coverage A limit of liability stated in your Policy Declarations for any loss during the policy period under this coverage after you have paid your deductible. This is an additional amount of insurance.

This coverage does not apply to:

a. any fee, assessment or expense of any governmental authority;

b. loss arising out of household products possessed or used:

   (1) for *business* purposes;

   (2) for illegal purposes;

   (3) by contractors; or

   (4) on driveways or walkways.

**Pollution or Contamination** under **Section I — Building Property Losses We Do Not Cover** does not apply to this **Additional Property Coverage.**

In the event that a loss is covered under both this coverage and **Additional Property Coverages — Building Ordinance or Law Coverage,** you may elect either one of these coverages, but not both.

10. *Fungi,* **Wet or Dry Rot, or Bacteria.** We will pay up to the amount stated in your Policy Declarations for:

a. the direct physical loss to covered property caused by *fungi,* wet or dry rot, or bacteria;

b. the cost to remove *fungi,* wet or dry rot, or bacteria from covered property;

Exhibit A—013

EXHIBIT 1



c.    the cost to tear out and replace any part of the building or other covered property as needed to gain access to the *fungi,* wet or dry rot, or bacteria;

d.    the cost of any testing of air or property to confirm the absence, presence or level of *fungi,* wet or dry rot, or bacteria, whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe there is the presence of *fungi,* wet or dry rot, or bacteria; and

e.    **Additional Living Expenses** or **Fair Rental Value** loss covered under **Additional Living Expense And Loss Of Rent.**

This coverage, **10.** *Fungi,* **Wet or Dry Rot, or Bacteria,** only applies when such loss or costs:

f.    are a result of a loss we cover that occurs during the policy period;

g.    are not excluded under **Building Property Losses We Do Not Cover;** and

h.    only if reasonable means are used to save and preserve the property from further damage.

This coverage does not apply to loss to trees, shrubs, or other plants.

The limit of liability stated in your Policy Declarations for *Fungi,* **Wet or Dry Rot, or Bacteria** is the most we will pay for the total of all loss or costs for Coverages **A, B, C** and **D,** and does not increase the limit of liability for these coverages, regardless of the number of locations or number of claims made.

**11. Collapse.**

a.    With respect to this coverage collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

    (1)  A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

    (2)  A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

    (3)  A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

b.    We insure for direct physical loss to covered property involving collapse of the dwelling or any part of the dwelling if the collapse was caused by one or more of the following:

    (1)  The perils under Personal Property Losses We Cover;

    (2)  Decay that is hidden from view, unless the presence of such decay is known to an *insured* prior to collapse;

    (3)  Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an *insured* prior to collapse;

    (4)  Weight of contents, equipment, animals or people;

    (5)  Weight of rain which collects on a roof; or

    (6)  Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

c.    Loss to an awning, fence, patio, deck, pavement, swimming pool, hot tub or spa, including their filtration and circulation systems, landscape sprinkler system, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under b.(2) through (6) above, unless the loss is a direct result of the collapse of the dwelling or any part of the dwelling to which it is attached.

This coverage does not increase the limit of liability that applies to the damaged covered property.

**12. Volunteer America**

We insure for all risks of accidental and direct physical loss to the property described in **Coverage C — Personal Property,** when the loss occurs as a direct result of acting as a *volunteer.* No deductible applies to this coverage.

Exhibit A---014
EXHIBIT 1

**13. Criminal Conviction Reward.**

    **a.** We will pay the amount stated in your Policy Declarations to an eligible person for information leading to the arrest and conviction of the person(s) committing a crime resulting in loss to covered property; and

    **b.** We will pay up to the amount stated in your Policy Declarations to an eligible person for the return of stolen covered property, when the loss is caused by theft. However, we will pay no more than the lesser of the following amounts:

        **(1)** *actual cash value* of the stolen property at the time the property is returned, but not more than the amount that would have been required to repair or replace; or

        **(2)** the amount determined by the loss settlement procedure applicable to the property returned had the property not been recovered.

    **c.** This coverage applies subject to the following conditions:

        **(1)** An eligible person means that person identified by a law enforcement agency as being the first to provide the necessary information or return the stolen property, and who is not:

            **(a)** an *insured;*

            **(b)** a relative of an *insured;*

            **(c)** an employee of a law enforcement agency;

            **(d)** an employee of a *business* engaged in property protection;

            **(e)** any person who had custody of the property at the time the theft was committed; or

            **(f)** any person involved in the crime.

        **(2)** No reward will be paid unless and until the person(s) committing the crime is (are) convicted or the property returned. The amount of the reward in items **a.** and **b.** above is the most we will pay for any one loss to an eligible person.

---

## SECTION I — PROPERTY CONDITIONS

**1.** **Deductible.** In case of loss under **Section I — Property Coverages** of this policy, we cover only that part of the loss over the applicable deductible stated in your Policy Declarations.

    The deductible does not apply to **Coverage D — Additional Living Expense And Loss Of Rent** or **Fire Department Service Charge.**

**2.** **Your Duties to Select and Maintain Policy Limits.** It is your responsibility to select and maintain adequate amounts of insurance on your dwelling, other structures and personal property. To assist you with this responsibility, we will suggest annual changes to your policy limits. These suggestions will be made effective on the renewal of your policy and will be based on information provided to us by you or your agent about your dwelling's features and may be supplemented by public record or inspection. Labor and material cost trends for your area supplied to us by recognized residential construction cost specialists will be included. Payment of your renewal is all that is necessary to indicate your acceptance of the new amount.

**3.** **An Insured's Duties After Loss.** In case of a loss to which this insurance may apply, you must perform the following duties:

    **a.** cooperate with us in the investigation, settlement or defense of any claim or suit;

    **b.** give immediate notice to us or our agent;

    **c.** notify the police in case of loss by theft;

    **d.** protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep an accurate record of repair expenses;

    **e.** prepare an inventory of the loss to the building and damaged personal property showing in detail the quantity, description, *replacement cost* and age. Attach all bills, receipts and related documents that justify the figures in the inventory;

HOM-7030/EP 1/09            - 11 -

Exhibit A---015

EXHIBIT 1



f.  as often as we reasonably require:

   (1)  exhibit the damaged and undamaged property;

   (2)  provide us with records and documents we request and permit us to make copies; and

   (3)  submit to examinations under oath and subscribe the same. We may examine you separately and apart from your spouse, civil or *domestic partner,* or any other *Insured.* You shall not interfere with us examining any other *Insured.*

g.  submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   (1)  the time and cause of loss;

   (2)  interest of the *Insured* and all others in the property involved and all encumbrances on the property;

   (3)  other insurance which may cover the loss;

   (4)  changes in title or occupancy of the property during the term of the policy;

   (5)  specifications of any damaged building and detailed repair estimates;

   (6)  an inventory of damaged personal property described in 3.e.;

   (7)  receipts for **Additional Living Expenses** incurred or records supporting the **Loss of Rent.**

4.  **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

   a.  for more than the amount of the *Insured's* interest at the time of loss; or

   b.  for more than the applicable limit of liability,

   whichever is less.

5.  **Loss Settlement.** Covered property losses are settled as follows:

   a.  **Replacement Cost.** Property under Coverage A or B at *replacement cost,* not including those items listed in 5.b.(2) and (3) below subject to the following:

      (1)  We will pay the full cost of repair or replacement, but not exceeding the smallest of the following amounts:

         (a)  the limit of liability under the policy applying to Coverage A or B;

         (b)  the *replacement cost* of that part of the damaged building for equivalent construction and use on the same premises as determined shortly following the loss;

         (c)  the full amount actually and necessarily incurred to repair or replace the damaged building as determined shortly following the loss;

         (d)  the direct financial loss you incur; or

         (e)  our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

      (2)  When more than one layer of siding or roofing exists for **Building Property We Cover,** we will pay for the replacement of one layer only. The layer to be replaced will be at your option. The payment will be subject to all other policy conditions relating to loss payment.

      When more than one layer of finished flooring exists we will pay for the finish of only one layer.

      (3)  If the cost to repair or replace is $1,000 or more, we will pay the difference between *actual cash value* and *replacement cost* only when the damaged or destroyed property is repaired or replaced.

      (4)  You may disregard the *replacement cost* loss settlement provisions and make claim under this policy for loss or damage to buildings on an *actual cash value* basis but not exceeding the smallest of the following amounts:

         (a)  the applicable limit of liability;

         (b)  the direct financial loss you incur; or

HOM-7030/EP 1/09                                    - 12 -

Exhibit A---016

EXHIBIT 1

    (c) our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

You may still make claim on a *replacement cost* basis by notifying us of your intent to do so within 180 days after the date of loss.

**b.** *Actual Cash Value.*

    **(1)** Personal property covered under Coverage C;

    **(2)** Wood fences, outdoor antennae and awnings, all whether attached or not to buildings; and

    **(3)** Structures that are not buildings under Coverage B, except driveways, walkways and other structures connected to the building by only a fence, utility line, plumbing or similar connection;

at *actual cash value* at the time of loss not exceeding the amount necessary to repair or replace.

**6.** **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

    **a.** repair or replace any part to restore the pair or set to its value before the loss; or

    **b.** pay the difference between *actual cash value* of the pair or set before and after the loss.

**7.** **Appraisal.** If you and we do not agree on the amount of the loss, including the amount of *actual cash value* or *replacement cost,* then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of you or the company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then resolve the issues surrounding the loss, appraise the loss, stating separately the *actual cash value* or *replacement cost* of each item, and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two of these three, when filed with the company shall determine the amount of loss.

Each party will:

    **a.** pay its own appraiser; and

    **b.** bear the other expenses of the appraisal and umpire equally.

**8.** **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions and the action is started within one year after the inception of the loss or damage.

**9.** **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the property damaged with equivalent property.

**10.** **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy to receive payment. Loss will be payable 30 days after:

    **a.** we reach agreement with you;

    **b.** there is an entry of a final judgment; or

    **c.** there is a filing of an appraisal award with us.

**11.** **Abandonment of Property.** We need not accept any property abandoned by any *insured.*

**12.** **Mortgage Clause.**

The word "mortgagee" includes trustee. If a mortgagee is named in this policy, any loss payable under Coverage A or B shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

    **a.** notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

    **b.** pays any premium due under this policy on demand if you have neglected to pay the premium;

    **c.** submit a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so.

    **d.** complies with item 3.e. of **Section I — Property Conditions.**



HOM-7030/EP 1/09          - 13 -

Exhibit A—017

EXHIBIT 1

8374

06C000150002500000000030757356616

Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee. If the policy is canceled or not renewed by us, the mortgagee shall be notified at least 20 days before the date cancellation or nonrenewal takes effect.

If we pay the mortgagee for any loss and deny payment to you:

e. we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

f. at our option, we shall receive full or partial assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt as our payment, including any accrued interest, as it bears to the amount of the principal on the mortgage.

Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

14. **Other Insurance and Service Agreements.** If a loss covered by this policy is also covered by:

a. other insurance, we will pay only the proportion of the loss caused by a peril insured against under this policy that the limit of liability applying under this policy bears to the total amount of insurance covering the loss; or

b. a service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement includes a service plan, property restoration plan or warranty, even if it is characterized as insurance.

15. **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

16. **Salvage Value.** Any value that may be realized from *salvage* will not diminish the amount owed by you under the deductible clause. We need not accept, but have all rights to *salvage*.

## SECTION II — LIABILITY COVERAGES

**LIABILITY LOSSES WE COVER**

**COVERAGE E — PERSONAL LIABILITY**

If a claim is made or a suit is brought against any insured for damages because of *bodily injury* or *property damage* caused by an *occurrence* to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the *insured* is legally liable; and

2. provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the *occurrence* equals our limit of liability.

**COVERAGE F — MEDICAL PAYMENTS TO OTHERS**

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing *bodily injury*. Medical expenses means reasonable charges for medical, surgical, X-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household other than *residence employees*. As to others, this coverage applies only:

1. to a person on the *insured location* with the permission of any *insured*; or

2. to a person off the *insured location*, if the *bodily injury*:

a. arises out of a condition on the *insured location* or the ways immediately adjoining;

b. is caused by the activities of any *insured*;

Exhibit A---018
EXHIBIT 1

c. is caused by a *residence employee* in the course of the *residence employee's* employment by any *insured;* or

d. is caused by an animal owned by or in the care of any *insured.*

## LIABILITY LOSSES WE DO NOT COVER

1. **Coverage E — Personal Liability** and **Coverage F — Medical Payments to Others** do not apply to *bodily injury* or *property damage:*

   a. which is expected or intended by any *insured* or which is the foreseeable result of an act or omission intended by any *insured;*

   This exclusion applies even if:

   (1) such *bodily injury* or *property damage* is of a different kind or degree than expected or intended; or

   (2) such *bodily injury* or *property damage* is sustained by a different person, or persons, than expected or intended.

   This exclusion does not apply to *bodily injury* resulting from the use of reasonable force by any *insured* to protect persons or property.

   b. which results from violation of criminal law committed by, or with the knowledge or consent of any *insured.*

   This exclusion applies whether or not any *insured* is charged or convicted of a violation of criminal law, or local or municipal ordinance.

   c. arising out of *business* pursuits of any *insured.*

   This exclusion does not apply to:

   (1) activities which are ordinarily incident to non-*business* pursuits;

   (2) the occasional or part-time *business* pursuits of any *insured* who is under 23 years of age;

   (3) the rental or holding for rental of an *insured location:*

   (a) on an occasional basis for the exclusive use as a residence;

   (b) in part, unless intended for use as a residence by more than two roomers or boarders; or

   (c) in part, as an office, school, studio or private garage;

   d. arising out of the rendering or failing to render professional services;

   e. arising out of any premises owned or rented to any *insured* which is not an *insured location;*

   f. arising out of the ownership, maintenance, use, loading or unloading of:

   (1) aircraft.

   This does not apply to model aircraft. Any aircraft designed for carrying persons or cargo is not a model aircraft.

   (2) motorized land vehicles, including any trailers, owned or operated by or rented or loaned to any *insured.*

   This exclusion does not apply to:

   (a) a trailer not towed by or carried on a motorized land vehicle;

   (b) a motorized land vehicle designed for recreational use off public roads, not subject to motor vehicle registration, licensing or permits and:

   i. not owned by any *insured;* or

   ii. owned by any *insured,* while on an *insured location;*

   (c) a motorized golf cart which is owned by an *insured,* designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per

HOM-7030/EP 1/09                                        - 15 -

EXHIBIT 1



hour on level ground and at the time of an *occurrence* is within the legal boundaries of:

    i.    a golfing facility and is parked or stored there, or being used by an *insured* to:

        (i)    play the game of golf or for other recreational or leisure activity allowed by the facility;

        (ii)    travel to or from an area where motor vehicles or golf carts are parked or stored; or

        (iii)    cross public roads at designated points to access other parts of the golfing facility; or

    ii.    a private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an *insured's* residence.

  **(d)**  a motorized land vehicle used solely for assisting the handicapped or solely for the maintenance of an *insured location,* which is:

    i.    not designed for travel on public roads; and

    ii.    not subject to motor vehicle registration, licensing or permits; or

  **(e)**  electric motorized ride-on vehicles designed to be operated by children under the age of eight and designed for speeds of less than six miles per hour; or

  **(f)**  a motorized land vehicle in dead storage on an *insured location.*

**(3)**  watercraft:

  **(a)**  owned by or rented to any *insured* if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

  **(b)**  owned by or rented to any *insured* if it is a sailing vessel 26 feet or more in overall length, with or without auxiliary power;

  **(c)**  powered by one or more outboard motors with 50 or more total horsepower if the outboard motors are owned by any *insured.*

However, outboard motors of 50 or more total horsepower are covered for the policy period if:

    i.    you acquired them prior to the policy inception, and:

        (i)    declared them at policy inception; or

        (ii)    you ask us in writing to insure them within 45 days after you become the owner;

    ii.    you acquire them during the policy period, provided you ask us to insure them:

        (i)    during the policy period in which you become the owner; or

        (ii)    within 45 days after you become the owner;

    whichever is greater, and pay any resulting additional premium from the date acquired.

  **(d)**  designed as an air boat, air cushion, or similar type of craft; or

  **(e)**  owned by any *insured* which is a *personal watercraft.*

This exclusion does not apply while the watercraft is stored.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

Exclusions e. and f. do not apply to *bodily injury* to a *residence employee* arising out of and in the course of the *residence employee's* employment by any *insured;*

**g.**  arising out of:

  **(1)**  the entrustment by any *insured* to any person;

  **(2)**  the supervision by any *insured* of any person;

HOM-7030/EP 1/09          - 16 -

(3) any act, decision or omission by any *insured;*

(4) any liability statutorily imposed on any *insured;* or

(5) any liability assumed through an unwritten or written agreement by any *insured;*

with regard to any aircraft, motorized land vehicle or watercraft which is not covered under Section II of this policy.

h. caused directly or indirectly by war, including the following and any consequences of the following:

(1) undeclared war, civil war, insurrection, rebellion, or revolution;

(2) warlike act by a military force or military personnel; or

(3) destruction or seizure or use for a military purpose.

Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

i. which results from the legal liability of any *insured* because of home care services, day care or any hospice related activity provided to any person on a regular basis by or at the direction of:

(1) any *insured;*

(2) any employee of any *insured;*

(3) any other person actually or apparently acting on behalf of any *insured.*

Regular basis means more than 20 hours per week. This exclusion does not apply to:

(1) home care services provided to the relatives of any *insured;*

(2) occasional or part-time home care services provided by any *insured* under 23 years of age.

j. which arises out of the transmission of a communicable disease by any *insured;*

k. arising out of physical or mental abuse, sexual molestation or sexual harassment.

l. arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs.

However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

m. arising out of any *insured's* participation in, or preparation or practice for any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft regardless of whether such contest is spontaneous, prearranged or organized. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power.

2. **Coverage E — Personal Liability** does not apply to:

a. Liability:

(1) for any assessment charged against you as a member of an association of property owners except as provided under **Additional Liability Coverages — Loss Assessment Coverage** in **Section II — Liability Coverages;**

(2) under any contract or agreement. However, this does not apply to written contracts:

(a) that directly relate to the ownership, maintenance or use of an *insured location;* or

(b) where the liability of others is assumed by the *insured* prior to an *occurrence;*

unless excluded in 2.a.(1) above or elsewhere in this policy.

(3) liability arising out of any written or oral agreement for the sale or transfer of real property, including but not limited to liability for:

(a) known or unknown property or structural defects;

(b) known or hidden defects in the plumbing, heating, air conditioning or electrical systems;

HOM-7030/EP 1/09

- 17 -

Exhibit A---021



EXHIBIT 1

       **(c)**  known or unknown soil conditions or drainage problems; or

       **(d)**  concealment or misrepresentation of any known defects.

**b.**  *property damage* to property owned by any *insured;*

**c.**  *property damage* to property rented to, occupied or used by or in the care of any *insured.* This exclusion does not apply to *property damage* caused by fire, smoke, explosion or water;

**d.**  *bodily injury* to any person eligible to receive any benefits required to be provided or voluntarily provided by any *insured* under:

    **(1)**  any workers compensation;

    **(2)**  non-occupational disability; or

    **(3)**  occupational disease law;

**e.**  *bodily injury* or *property damage* for which any *insured* under this policy is also an *insured* under a nuclear energy liability policy or would be an *insured* but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors;

**f.**  *bodily injury* to an *insured* within the meaning of parts (1) or (2) of **Policy Definitions, 3.g. Insured;**

**g.**  *bodily injury* or *property damage* arising, in whole or part, out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, emission, transmission, absorption, ingestion or inhalation of *pollutants or contaminants* at any time. This includes any loss, cost or expense arising out of any:

    **(1)**  request, demand or order that any *insured* or others test for, monitor, abate, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess, the effects of *pollutants or contaminants;*

    **(2)**  claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to, or assessing, the effects of *pollutants or contaminants;*

This exclusion does not apply to *bodily injury* sustained within a building on the *residence premises* and caused by, smoke, fumes, including carbon monoxide, vapor or soot from equipment used to heat that building.

**i.**  liability arising from any transmission, upload or download, whether intentional or not, of computer code, programs or data;

**j.**  liability arising out of any animal that any *insured* acquires, owns or keeps that:

    **(1)**  is of a breed or kind named by or controlled by any local, state, or federal ordinance or law because of public safety concerns;

    **(2)**  has previously inflicted injury upon any person resulting in;

       **(a)**  maiming, disfigurement, mutilation, impairment, disability or death; or

       **(b)**  loss of work, schooling, or a loss of ability to carry on with a normal routine;

    **(3)**  has been trained to fight or attack;

    **(4)**  has been trained to kill;

    **(5)**  is a wild canine or feral dog or an offspring from breeding with a wild canine;

    **(6)**  is illegal to acquire, own or keep;

    **(7)**  is wild by birth or by nature and the species is not customarily domesticated;

    **(8)**  is a bird of prey;

    **(9)**  is venomous; or

    **(10)**  is a primate.

Item **(3)** above does not apply in the event the animal is reacting to protect people or property from imminent harm.

Exhibit A---022

EXHIBIT 1

This exclusion does not apply to any person or organization described as an *insured* in **Policy Definitions**, item g.(3).

3. **Coverage F — Medical Payments to Others** does not apply to *bodily injury:*

   a. to a *residence employee* if the *bodily injury* occurs off the *insured location* and does not arise out of or in the course of the *residence employee's* employment by an *insured;*

   b. to any person, eligible to receive any benefits required to be provided or voluntarily provided under any workers compensation; non-occupational disability, or occupational disease law;

   c. from any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

   d. to any person, other than a *residence employee* of any *insured,* regularly residing on any part of the *insured location.*

## ADDITIONAL LIABILITY COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

   a. expenses we incur and costs taxed against any *insured* in any suit we defend;

   b. premiums on bonds required in a suit we defend, but not for bond amounts greater than the limit of liability for **Coverage E — Personal Liability.** We are not obligated to apply for or furnish any bond; and

   c. reasonable expenses incurred by any *insured* at our request, including actual loss of earnings (but not loss of other income) up to $200 per day, for assisting us in the investigation or defense of any claim or suit.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by any *insured* for *bodily injury* covered under this policy. We will not pay for first aid to you or any other *insured.*

3. **Damage to Property of Others.** We will pay on a *replacement cost* basis up to $500 per *occurrence* for *property damage* to property of others caused by any *insured.*

   We will not pay for *property damage:*

   a. if insurance is otherwise provided in this policy;

   b. caused intentionally by any *insured* who is 13 years of age or older;

   c. to property owned by or rented to any *insured,* a tenant of any *insured,* or a resident in your household; or

   d. arising out of:

   (1) *business* pursuits;

   (2) any act or omission in connection with a premises owned, rented or controlled by an *insured,* other than the *insured location;* or

   (3) the ownership, maintenance, or use of aircraft, watercraft or motorized land vehicles. This does not apply to a motorized land vehicle designed for recreational use off public roads, not subject to motor vehicle registration, licensing or permits and not owned by any *insured.*

4. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

   We will pay up to the limit shown on your Policy Declarations page for:

   a. the legal obligation of an *insured* to pay because of theft or unauthorized use of credit cards issued to or registered in any *insured's* name;

   b. loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in any *insured's* name.

   We do not cover use by a resident of your household, a person who has been entrusted with the credit card or fund transfer card or any person if any *insured* has not complied with all terms and conditions under which the credit card or fund transfer card is issued.

HOM-7030/EP 1/09 · 19 -



c. loss to any *insured* caused by forgery or alteration of any check or negotiable instrument; and

d. loss to any *insured* through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of *business* pursuits or dishonesty of any *insured.*

Defense:

a. We may make any investigation and settle any claim or suit that we decide is appropriate.

b. If a suit is brought against any *insured* for liability covered under this Credit Card or Fund Transfer Card Coverage, we will provide a defense at our expense by counsel of our choice.

c. We have the option to defend at our expense any *insured* or any *insured's* bank against any suit for the enforcement of payment under the forgery coverage.

5. **Statutorily Imposed Vicarious Parental Liability.**

We will pay the lesser of:

a. the statutorily imposed limit; or

b. $3,000;

for the legal obligation you are required to pay as a result of acts of a minor child who resides with you.

This coverage is excess over any other valid and collectible insurance.

6. **Loss Assessment.**

a. we will pay loss assessments charged during the policy period against you by the association of property owners up to the limit of liability stated in your Policy Declarations, when the assessment is made as a result of:

(1) each direct loss to property, caused by a peril that would be covered under **Section I — Property Coverages** of this policy;

**SPECIAL EXCLUSION:** There is no coverage for any loss assessment resulting from the peril of *earthquake.* However, loss assessment for ensuing direct loss by fire, explosion or theft is covered.

(2) each *occurrence* to which **Section II — Liability Coverages** of this policy would apply; and

(3) liability for each act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

(a) the director, officer or trustee is elected by the members of the association of property owners; and

(b) the director, officer or trustee serves without deriving any income from the exercise of his/her duties, which are solely on behalf of the association of property owners.

b. **DEDUCTIBLE.** We will pay only that part of your assessment per unit for property insured under Section I that exceeds $500. No other deductible applies to this coverage. If our liability for a loss results from Section I and coverage under this option, only the larger deductible will apply.

7. **Volunteer America.**

a. Under **Section II —Liability Coverages,** the following applies:

(1) **Property Damage to Others.** We will pay an additional $2,000 for direct damage caused as direct result of acting as a *volunteer.*

(2) **Medical Payments to Others.** We will pay up to double the amount stated in your Policy Declarations for *bodily injury* caused as a direct result of acting as a *volunteer.*

b. Under **Section II — Liability Losses We Do Not Cover** the following items are modified as follows:

(1) Item **1.c.** does not apply to activities as a *volunteer.*

HOM-7030/EP 1/09 - 20 -

Exhibit A---024
EXHIBIT 1

(2) Item **1.d.** does not apply to professional services, other than professional health care services by a doctor, performed as a *volunteer.*

## SECTION II — LIABILITY CONDITIONS

1. **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one *occurrence* will not exceed the limit of liability for Coverage E stated in your Policy Declarations. This limit is the same regardless of the number of *insureds,* claims made or persons injured.

   Our total liability under Coverage F for all medical expense payable for *bodily injury* to one person as the result of one accident shall not exceed the limit of liability for Coverage F stated in your Policy Declarations.

2. **Severability of Insurance.** This insurance applies separately to each *insured.* This condition shall not increase our limit of liability for any one *occurrence.*

3. **Your Duties After Loss.** In case of an accident or *occurrence,* the *insured* shall perform the following duties that apply:

   a. give written notice to us or our agent as soon as practicable, which sets forth:

   (1) the identity of the policy and *insured;*

   (2) reasonably available information on the time, place and circumstances of the accident or *occurrence;*

   (3) names and addresses of any claimants and witnesses; and

   (4) in case of loss under the **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money** also notify the credit card or fund transfer card company;

   b. promptly forward to us every notice, demand, summons or other process relating to the accident or *occurrence;*

   c. at our request, help us:

   (1) to make a settlement;

   (2) to enforce any right of contribution or indemnity against any person or organization who may be liable to any *insured;*

   (3) with the conduct of suits and attend hearings and trials;

   (4) to secure and give evidence and obtain the attendance of witnesses;

   d. under the **Additional Liability Coverages — Damage to the Property of Others —** submit to us within 60 days after the loss, a sworn statement of loss and exhibit the damaged property, if within the *insured's* control;

   e. submit within 60 days after the loss, evidence or affidavit supporting a claim under the **Additional Liability Coverages, Credit Card, Fund Transfer Card, Forgery and Counterfeit Money Coverage,** stating the amount and cause of loss;

   f. the **insured** shall not, except at the *insured's* own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the *bodily injury.*

4. **Duties of an Injured Person — Coverage F — Medical Payments to Others.** The injured person or someone acting for the injured person will:

   a. give us written proof of claim, under oath if required, as soon as practical;

   b. authorize us to obtain copies of medical reports and records.

   The injured person shall submit to physical examination by a doctor selected by us when and as often as we reasonably require.

5. **Payment of Claim — Coverage F — Medical Payments to Others.** Payment under this coverage is not an admission of liability by any *insured* or us.

Exhibit A---025

EXHIBIT 1



**6. Payment of Interest — Coverage E — Personal Liability.**

If a notice, demand, summons, judgment, or other process is promptly forwarded to us as required by **Liability Condition 3.b.** under **Your Duties After Loss** and we accept the defense or agree to the judgment, we will pay interest on the judgment, subject to all of the following:

a. We will pay the interest on that part of the judgment that is covered by this policy and that does not exceed our applicable limit of liability.

b. We will pay interest that accrues on the judgment until we pay, tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

c. If we appeal the judgment, we will pay interest on the entire judgment.

d. Post-judgment interest is in addition to the applicable limit of liability.

e. Where we are required to cover prejudgment interest, it shall be included in the limit of liability and is not an additional amount of insurance.



**7. Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

No one shall have any right to join us as a party to any action against any **insured**. Further, no action with respect to Coverage E shall be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

**8. Bankruptcy of an insured.** Bankruptcy or insolvency of any **insured** shall not relieve us of any of our obligations under this policy.

**9. Other Insurance — Coverage E — Personal Liability.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

---

## SECTIONS I AND II — PROPERTY AND LIABILITY CONDITIONS

**1. Policy Period and Changes.**

a. The effective time of this policy is 12:01 A.M. at the **residence premises**. This policy applies only to loss under Section I, or **bodily injury** or **property damage** under Section II, which occurs during the policy period. This policy may be renewed for successive policy periods if the required premium is paid and accepted by us on or before the expiration of the current policy period. The premium will be computed at our then current rate for coverage then offered.

b. Changes:

(1) Before the end of any policy period, we may offer to change the coverage provided in this policy. Payment of the premium billed by us for the next policy period will be your acceptance of our offer.

(2) This policy contains all agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us. If a change requires a premium adjustment, we will adjust the premium as of the effective date of change. Additional or return premium of $3.00 or less will be waived.

**2. Concealment or Fraud.** This policy was issued in reliance upon the information provided on your application. We may void this policy if you or an **insured** have intentionally concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct at the time application was made or any time during the policy period.

We may void this policy or deny coverage for a loss or **occurrence** if you or an **insured** have intentionally concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

We may void this policy or deny coverage because of fraud or material misrepresentation even after a loss or **occurrence**. This means we will not be liable for any claims or damages which would otherwise be covered. If we make a payment, we may request that you reimburse us. If so, you must reimburse us for any payments we may have already made.

Exhibit A—026
EXHIBIT 1

3. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state.

   This liberalization clause does not apply to changes implemented that involve a broadening and a restriction of coverage or an increase in premium.

4. **Cancellation.**

   a. You may cancel this policy at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect. We may waive the requirement the notice be in writing by confirming the date and time of cancellation to you in writing.

   b. We may cancel this policy only for the reasons stated below by notifying you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in your Policy Declarations. Proof of mailing shall be sufficient proof of notice.

      (1) When you have not paid the premium we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect.

      (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying you at least 10 days before the date cancellation takes effect.

      (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel if there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy or if the risk has changed substantially since the policy was issued. This can be done by notifying you at least 15 days before the date cancellation takes effect.

   c. When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us for cancellation, we will refund it within a reasonable time after the date cancellation takes effect.

5. **Non-Renewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in your Policy Declarations, written notice at least 20 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

6. **Assignment.** Assignment of this policy shall not be valid unless and until we give our written consent.

7. **Our Right to Recover Payment.** You may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

   If an assignment is sought, the *insured* shall sign and deliver all related papers and cooperate with us in any reasonable manner.

   Subrogation does not apply under Section II to **Coverage F — Medical Payments to Others** or **Additional Liability Coverages, Damage to Property of Others.**

8. **Death.** If you die:

   a. we insure your legal representative, but only with respect to the premises and property of the deceased covered under the policy at the time of death.

   b. *insured* shall include:

      (1) any member of the household who is an *insured* at the time of your death, but only while a resident of the *residence premises;* and

      (2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.



HOM-7030/EP 1/09

- 23 -

Exhibit A---027
**EXHIBIT 1**

# POLICY DEFINITIONS

1. Throughout this policy, "you" and "your" refer to:

   a. the "named insured" shown in your Policy Declarations; and

   if a resident of the same household:

   b. the spouse;

   c. the civil partner by civil union licensed and certified by the state; or

   d. the **domestic partner.**

2. "We", "us" and "our" refer to the underwriting company providing this insurance as shown in your Policy Declarations.

3. In addition, certain words and phrases are defined as follows:

   a. *"Actual cash value"*

      (1) When damage to property is economically repairable, *actual cash value* shall mean the cost of materials and labor that would be necessary to repair the damage, less reasonable deduction for wear and tear, deterioration and obsolescence.

      (2) When damage to property is not economically repairable or loss prevents repair, *actual cash value* shall mean the market value of property in a used condition equal to that of the lost or damaged property, if reasonably available on the used market.

      (3) Otherwise, *actual cash value* shall mean the market value of new, identical or nearly identical property, less reasonable deduction for wear and tear, deterioration and obsolescence.

      (4) *Actual cash value* shall not include taxes or any expenses unless incurred following the loss.

   b. *"Bodily injury"* means bodily harm, sickness or disease, including required care, loss of services and death resulting therefrom.

   c. *"Business"* means a trade, profession or occupation engaged in on a full-time, part-time or occasional basis, or any other activity, including civic or public, engaged in for money or other compensation, except for the following:

      (1) One or more activities, not described in (2) below, for which no *insured* receives more than $3,000 in total compensation for the 12 months before the beginning of the policy period; and

      (2) volunteer activities for which no money or other compensation is received other than for expenses incurred to perform the activity.

   d. *Domestic partner* means a person living as a continuing partner with you and:

      (1) is at least 18 years of age and competent to contract;

      (2) is not a relative; and

      (3) shares with you the responsibility for each other's welfare, evidence of which includes:

         (a) the sharing in domestic responsibilities for the maintenance of the household; or

         (b) having joint financial obligations, resources or assets; or

         (c) one with whom you have made a declaration of domestic partnership or similar declaration with an employer or government entity.

      *Domestic partner* does not include more than one person, a roommate whether sharing expenses equally or not, or one who pays rent to the named *insured.*

   e. *"Earthquake"* means shaking or trembling of the earth, whether caused by volcanic activity, tectonic processes or any other cause.

   f. *"Fungi"* means any type or form of fungus, including yeast, mold or mildew, blight or mushroom and any mycotoxins, spore, scents or other substances, products or by-products produced, released by or arising out of *fungi,* including growth, proliferation or spread of *fungi* or the

Exhibit A---028

EXHIBIT 1

current or past presence of *fungi*. However, this definition does not include any *fungi* intended by the *insured* for consumption.

**g.** *"Insured"* means:

**(1)** you; and

**(2)** so long as you remain a resident of the *residence premises,* the following residents of the *residence premises:*

   **(a)** your relatives;

   **(b)** any other person under the age of 24 who is in the care of any person described in **(1)** or **(2)(a)** above.

Anyone described above who is a student temporarily residing away from your *residence premises* while attending school shall be considered a resident of your *residence premises.*

**Under Section II — Liability Coverage,** *"Insured"* also means:

**(3)** with respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in g.(2)(a) or **(b)**. A person or organization using or having custody of these animals or watercraft in the course of any *business,* or without permission of the owner is not an *insured;*

**(4)** with respect to any vehicle to which this policy applies:

   **(a)** any person while engaged in your employment or the employment of any person included in g.(2)(a) or **(b)**; or

   **(b)** any other person using the vehicle on an *insured location* with any *insured's* permission.

**h.** *"Insured location"* means:

**(1)** the *residence premises;*

**(2)** that part of any other premises, other structures and grounds, used by you as a residence and which is shown in your Policy Declarations. This includes any premises, structures and grounds which are acquired by you during the policy period for your use as a residence;

**(3)** any premises not owned by you which you have the right or privilege to use arising out of **h.1.** or **h.2.** above;

**(4)** any part of a premises not owned by any *insured* but where any *insured* is temporarily residing;

**(5)** vacant land, including that which is vacant except for a fence, owned by or rented to any *insured* other than farmland;

**(6)** land owned by or rented to any *insured* on which a one, two, three or four family dwelling is being constructed as a residence for any *insured;*

**(7)** individual or family cemetery plots or burial vaults of any *insured;* or

**(8)** any part of a premises occasionally rented to any *insured* for other than *business* purposes.

**i.** *"Occurrence"* means an accident, including exposure to conditions which results in:

**(1)** *bodily injury;* or

**(2)** *property damage;*

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one *occurrence.*

**j.** *"Personal Watercraft"* means jet skis, wet bikes or other craft, using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

**k.** *"Pollutants or contaminants"* means any of the following:

**(1)** liquid fuels;

Exhibit A---029
EXHIBIT 1



(2) lead or any materials containing lead;

(3) asbestos or any materials containing asbestos;

(4) radon;

(5) formaldehyde or any materials containing formaldehyde;

(6) electric fields, magnetic fields, electromagnetic fields, power frequency fields, electro-magnetic radiation or any other electric or magnetic energy of any frequency;

(7) carbon monoxide;

(8) pathogenic or poisonous biological materials;

(9) acids, alkalis or chemicals;

(10) radioactive substances; or

(11) any other irritant or contaminant, including waste, vapor, fumes or odors.

l.  *"Property damage"* means physical damage to or destruction of tangible property, including loss of use of this property.

m.  "Replacement cost"

(1) In case of loss or damage to buildings, *replacement cost* means the cost, at the time of loss, to repair or replace the damaged property with new materials of like kind and quality, without deduction for depreciation.

(2) In case of loss to personal property, *replacement cost* means the cost, at the time of loss, of a new article identical to the one damaged, destroyed or stolen. When the identical article is no longer manufactured or is not available, *replacement cost* shall mean the cost of a new article similar to the one damaged or destroyed and which is of comparable quality and usefulness, without deduction for depreciation.

n.  *"Residence employee"* means an employee of any *insured* who performs duties in connection with the maintenance or use of the *residence premises*, including household or domestic services, or who performs duties elsewhere of a similar nature not in connection with the *business* of any *insured*.

o.  *"Residence premises"* means:

(1) the one, two, three or four family dwelling, used principally as a private residence;

(2) other structures and grounds; or

(3) that part of any other building;

where you reside and which is shown in your Policy Declarations.

p.  *"Salvage"* means property having value and included in a covered loss.

q.  *"Volunteer"* means an *insured* employed by an organization for a charitable purpose or in direct service to the general public or the community.

*Volunteer* service does not include the *insured's* primary employment. *Volunteer* Service includes, but is not limited to, service performed for churches, schools, hospitals, and charitable, arts and civic organizations.



Exhibit A---030
EXHIBIT 1

# SPECIAL PROVISIONS — OHIO

## INSURING AGREEMENT

The following language is added:

The application for this policy is incorporated herein and made a part of this policy. When we refer to the policy, we mean this document, the application, the Declarations page, and any applicable endorsements. The *insured* agrees that all of the statements in the application for this policy are his or her statements and constitute warranties. The *insured* agrees that this policy is issued in reliance upon the truth of the *insured's* warranties in the application. If it is determined that any warranty made in the application is incorrect, this policy shall be void back to the date of inception upon return of the policy premium.

## SECTION I — PROPERTY COVERAGES

### BUILDING PROPERTY LOSSES WE DO NOT COVER

Item 6.f. is deleted and replaced by the following:

    f. birds, vermin, rodents, insects or domestic animals, except for breakage of glass;

The following is added:

21. **Cosmetic loss or damage,** meaning any loss that is limited to the physical appearance of a metal roof surface.

    Metal roof means all metal roofing materials on a metal roofing system. For purposes of this exclusion, metal roof does not include the coverings of bay or bow windows. This exclusion does not apply when the roof overlay is a material other than metal.

    This exclusion does not apply to policies endorsed with HOM-7220, Optimum™ Homeowners Coverage or HOM-7223, Ultra Homeowners Coverage.

### PERSONAL PROPERTY WE DO NOT COVER

Item 3.a. is deleted and replaced by the following:

    a. motorized land vehicles used solely to service a residence and not subject to motor vehicle registration or licensed for road use;

### ADDITIONAL PROPERTY COVERAGES

Under item 7. **Building Ordinance or Law Coverage** the following changes are made:

Item b. is deleted and replaced by the following:

    b. the costs to comply with any ordinance which requires any insured or others to test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, *pollutants or contaminants.* However, for purposes of **Building Ordinance or Law Coverage,** *pollutants or contaminants* shall not include asbestos or materials containing asbestos or lead.

The following is added to the paragraph describing limit of liability:

In the event of a covered loss resulting from an Insurance Services Offices® declared catastrophe for the state in which the *residence premises* is located, the limit for Building Ordinance or Law shall be up to twice the percentage shown for Building Ordinance or Law on the Policy Declarations.



Exhibit A---031

EXHIBIT 1

**Item 14. Mortgage Acquisition Expense Coverage** is added as follows (this is item **16.** for the New Quality-Plus coverage level; item **18.** for the Optimum and Ultra coverage levels):

**14. Mortgage Acquisition Expense Coverage.** In the event of a total loss of the dwelling shown in the Policy Declarations by a covered cause of loss, we will pay necessary expenses and fees toward the acquisition of a new first mortgage to repair or replace the insured dwelling, up to a maximum of $5,000.

No deductible applies to this coverage.

This is an additional amount of insurance.

This coverage **14. Mortgage Acquisition Expense Coverage** does not apply to policies endorsed with **HOM-7428/EP, Ultra Plus/Special Ultra Plus Coverage.**

## SECTION I — PROPERTY CONDITIONS

Under **3. An Insured's Duties After Loss**, item **b.** is deleted and replaced by the following:

    **b.**    give immediate notice to us or our agent. With respect to loss caused by the peril of Windstorm or Hail, the notice must be within 365 days after the date of the loss;

Under **5. Loss Settlement**, item **a.(3)** is deleted and replaced by the following:

    **(3)**    If the cost to repair or replace is $2,500 or more, we will pay the difference between *actual cash value* and *replacement cost* only when the damaged or destroyed property is repaired or replaced.

The following is added to **5. Loss Settlement:**

    **c.**    We will not pay for any loss in value of property, whether actual or perceived, or any;

        **(1)**    adverse impact on the ownership of, or transfer of ownership or title of property; or

        **(2)**    adverse impact on the acquisition of financing resulting from the covered physical damage to the property. If **Mortgage Acquisition Expense Coverage** or **Mortgage Extra Expense Coverage** is provided under Additional Property coverages, the application of this provision (2) does not apply to the extent coverage is provided for **Mortgage Acquisition Expense** or **Mortgage Extra Expense.**

Item **7. Appraisal** is deleted and replaced by the following:

    **7.**    **Appraisal.** If you and we do not agree on the amount of the loss, including the amount of *actual cash value* or *replacement cost*, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of you or the company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately the *actual cash value* or *replacement cost* of each item, and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two of these three, when filed with the company shall determine the amount of loss.

    Each party will:

    **a.**    pay its own appraiser; and

    **b.**    bear the other expenses of the appraisal and umpire equally.

    In no event will an appraisal be used for the purpose of interpreting any policy provision, determining causation or determining whether any item or loss is covered under this policy. If there is an appraisal, we still retain the right to deny the claim.

Exhibit A---032
EXHIBIT 1

(2) lead or any materials containing lead;

(3) asbestos or any materials containing asbestos;

(4) radon;

(5) formaldehyde or any materials containing formaldehyde;

(6) electric fields, magnetic fields, electromagnetic fields, power frequency fields, electro-magnetic radiation or any other electric or magnetic energy of any frequency;

(7) carbon monoxide;

(8) pathogenic or poisonous biological materials;

(9) acids, alkalis or chemicals;

(10) radioactive substances; or

(11) any other irritant or contaminant, including waste, vapor, fumes or odors.

l. *"Property damage"* means physical damage to or destruction of tangible property, including loss of use of this property.

m. "Replacement cost"

(1) In case of loss or damage to buildings, *replacement cost* means the cost, at the time of loss, to repair or replace the damaged property with new materials of like kind and quality, without deduction for depreciation.

(2) In case of loss to personal property, *replacement cost* means the cost, at the time of loss, of a new article identical to the one damaged, destroyed or stolen. When the identical article is no longer manufactured or is not available, *replacement cost* shall mean the cost of a new article similar to the one damaged or destroyed and which is of comparable quality and usefulness, without deduction for depreciation.

n. *"Residence employee"* means an employee of any *insured* who performs duties in connection with the maintenance or use of the *residence premises,* including household or domestic services, or who performs duties elsewhere of a similar nature not in connection with the *business* of any *insured.*

o. *"Residence premises"* means:

(1) the one, two, three or four family dwelling, used principally as a private residence;

(2) other structures and grounds; or

(3) that part of any other building;

where you reside and which is shown in your Policy Declarations.

p. *"Salvage"* means property having value and included in a covered loss.

q. *"Volunteer"* means an *insured* employed by an organization for a charitable purpose or in direct service to the general public or the community.

*Volunteer* service does not include the *insured's* primary employment. *Volunteer* Service includes, but is not limited to, service performed for churches, schools, hospitals, and charitable, arts and civic organizations.

Exhibit A---033
EXHIBIT 1

# SECTION II — LIABILITY COVERAGES

**LIABILITY LOSSES WE DO NOT COVER**

Item **1.f.(2)(d)** is deleted and replaced by the following:

      **(d)** a motorized land vehicle used solely for assisting the handicapped or solely for the maintenance of a residence, which is:

          **i.** not designated for travel on public roads; and

          **ii.** not subject to motor vehicle registration, licensing or permits;

The following is added to item **1.**:

    **n.** arising out of the actions of a dangerous or vicious dog, as defined under OHIO REV. CODE, Sec 955.11, and the *insured's* failure to keep:

      **(1)** the dangerous dog, while on the premises of the owner, keeper or harborer, restrained by a leash or a tether;

      **(2)** the vicious dog while on the premises of the owner, keeper or harborer, securely confined at all times in a locked pen that has a top, a locked fenced yard or other locked enclosure that has a top; and

      **(3)** the dangerous and vicious dog while off the premises of the owner, keeper or harborer, on a chain-link leash or tether that is not more than six feet in length and in addition, keep the dog:

          **(a)** confined in a locked pen that has a top, locked fenced yard or other locked enclosure that has a top;

          **(b)** leashed or tethered and controlled by a person who is of suitable age and discretion or securely attach, tie or affix the leash or tether to the ground or a stationary object or fixture so that the dog is adequately restrained and station such a person in close enough proximity to that dog so as to prevent it from causing injury to any person; or

          **(c)** muzzled.

    This exclusion does not apply to *bodily injury* to a *residence employee* arising out of and in the course of the *residence employee's* employment by an *insured*.

# SECTIONS I AND II — PROPERTY AND LIABILITY CONDITIONS

Item **2. Concealment or Fraud** is deleted and replaced by the following:

**2.** **Concealment or Fraud.** This policy will not provide coverage under any part of this policy for any *insured* or any other person or entity seeking benefits under this policy (whether before or after a loss) if any *insured*:

    **a.** Conceals or misrepresents any material fact or circumstance;

    **b.** Makes false statements; or

    **c.** Engages in fraudulent conduct;

    any of which relate to a loss, an accident, or a claim.

**4.** **Cancellation**

    Paragraph **b.** is deleted and replaced by the following:

    **b.** We may cancel this policy, as stated below, by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Policy Declarations. Proof of mailing will be sufficient proof of notice.

      **(1)** We may cancel at any time by letting you know at least 10 days before the date cancellation takes effect if we cancel because:

          **(a)** You have not paid the premium;

060000023002250000000030075B156616

182



HOM-7100/OHEP 8/16

**Exhibit A---034**


(b)   There has been a material misrepresentation of fact related to this insurance; or

(o)   Evidence of arson exists.

(2)   When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 30 days before the date cancellation takes effect.

(3)   When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel if the risk has changed substantially since the policy was issued. This can be done by letting you know at least 30 days before the date cancellation takes effect.

## POLICY DEFINITIONS

Under **3.a.** *"Actual Cash Value"*, item (4) is deleted.

All other provisions of this policy apply.

Exhibit A---035

EXHIBIT 1

DCN:S22018010832186040341 1005C   Received Date:09/08/2016

# PERSONAL PROPERTY REPLACEMENT COST

**1. PROPERTY COVERED**

For an additional premium, we cover:

a.   personal property under Coverage C; and

b.   awnings, carpeting, domestic appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings

at *replacement cost* at the time of loss.

**2. PROPERTY NOT COVERED**

The following property is not eligible for *replacement cost* settlement. Any loss shall be settled at *actual cash value* at the time of loss but not exceeding the amount necessary to repair or replace:

a.   antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced;

b.   memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value;

c.   personal property not maintained in good or workable condition;

d.   personal property that is outdated or obsolete and is stored or not being used;

e.   property not owned by any *insured;* and

f.   motorized land vehicles or earth moving or excavating equipment used to service the *residence premises.*

**3. CONDITIONS**

a.   We will pay the full cost of repair or replacement, but not exceeding the smallest of the following amounts:

(1)   the limit of liability of this policy applicable to the damaged, destroyed or stolen property;

(2)   the *replacement cost* of the property or any part;

(3)   the full amount actually and necessarily incurred by the *insured* in repairing or replacing the property or any part;

(4)   the direct financial loss you incur; or

(5)   our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

b.   We will pay the difference between *actual cash value* and *replacement cost* only after the damaged, destroyed or stolen property has actually been repaired or replaced.

c.   You may make a claim for loss on an *actual cash value* basis and then make a claim, within 180 days after loss, for any additional liability under *replacement cost,* after you have repaired or replaced the property.

All other provisions of this policy apply.

HOM-7301/EP 1/09



## EXTENDED DWELLING COVERAGE

For an additional premium, we will settle covered losses to the dwelling described in Coverage A up to the additional limit of liability shown in the Policy Declarations for **Extended Dwelling Coverage** provided you:

1. insure the dwelling to 100% of its *replacement cost* as agreed by us;

2. accept any yearly adjustments by us of Coverage A reflecting changes in the cost of construction for the area;

3. notify us of any addition or other remodeling which increases the *replacement cost* of the dwelling $5,000 or more within 180 days of the start of construction; and

4. repair or replace the damaged dwelling.

If you fail to comply with any of the above provisions, the limit of liability shown in the Policy Declarations for Coverage A shall apply.

From time to time we may make requests of you for updated dwelling information. If you fail to provide the information, or if we disagree on *replacement cost,* we may delete **Extended Dwelling Coverage** effective at policy renewal.

In the event of a covered loss resulting from an Insurance Services Offices® declared catastrophe for the state in which the *residence premises* is located, the limit for Extended Dwelling Coverage shall be up to twice the percentage shown for Extended Dwelling Coverage on the Policy Declarations.

All other provisions of this policy apply.

HOM-7300/EP 1/12

EXHIBIT 1

This policy is signed on our behalf by our President and Secretary.

Timothy M. Sweeney
President

Mark C. Touhey
Vice President and Secretary

This policy includes copyrighted material of Insurance
Services Office, Inc. with its permission.

HOM-7232/EP 1/09
G4



# Monthly Rental Agreement

**THIS AGREEMENT**, entered into this _SECOND_ day of _DECEMBER_, 20_16_, by and between _WILLIAM BOBEL_, hereinafter Lessor, and _CASSANDRA HOPE PRISIAZNYKCIASSOW_, hereinafter Lessee.

**WITNESSETH:** That for and in consideration of the payment of the rents and the performance of the covenants contained on the part of Lessee, said Lessor does hereby demise and let unto Lessee, and Lessee hires from Lessor those premises described as: _803 W. 6TH CT. LORAIN, OH 44052 SINGLE FAMILY RESIDENCE_
located at: _803 W. 6TH CT. LORAIN, OH 44052_

for a tenancy from month-to-month commencing on the _SECOND_ day of _DECEMBER_ 20_16_, and at a monthly rental of _1,300.00 ONE THOUSAND THREE DOLLARS_ Dollars ($ _1,300.00_ ) per month, payable monthly in advance on the _THIRD_ day of each and every month, on the following **TERMS AND CONDITIONS:**

**1. Form of Payment.** Lessee agrees to pay rent each month in the form of one personal check, OR one cashier's check, OR one money order made out to _OR SECTION 8 APPROVAL_

**2. Delivery of Payment.** Rent will be paid:
☒ in person, at _IPP DIRECT DEPOSIT_
☐ by mail, to _____

**3. Returned Checks.** If, for any reason, a check used by Lessee to pay Lessor is returned without having been paid, Lessee will pay a charge of _35.00 THIRTY FIVE_ Dollars ($ _35.00_ ) as additional rent AND take whatever other consequences there might be in making a late payment. After the second time a Lessee's check is returned, Lessee must thereafter secure a cashier's check or money order for payment of rent.

**4. Late Payments.** For any rent payment not paid by the date due, Lessee shall pay a late fee in the amount of _ONE HUNDRED_ Dollars ($ _100.00_ ).

**5. Prorated First Month.** For the period from Lessee's move-in date, _JANUARY 1_ 20_17_ through the end of the month, Lessee will pay to Lessor a prorated monthly rent of _1,300.00_ Dollars ($ _1,300.00_ ). This amount will be paid on or before the date the Lessee moves in.

**6. Occupants.** The said premises shall be occupied by no more than _2_ adults and _-0-_ children.

**7. Pets.** Pets shall not be allowed without the prior written consent of the Lessor. At the time of signing this lease, Lessee shall pay to Lessor, in trust, a deposit of _1,000.00_ Dollars ($ _1,000.00_ ), to be held and disbursed for pet damages to the Premises (if any) as provided by law. This deposit is in addition to any other security deposit stated in this lease. Any Lessee who wishes to keep a pet in the rented unit must sign a Pet Agreement Addendum.

**8. Parking.** Any parking that may be provided is strictly self-park and is at owner's risk. Parking fees are for a license to park only. No bailment or bailee custody is intended. Lessor is not responsible for, nor does Lessor assume any liability for damages caused by fire, theft, casualty or any other cause whatsoever with respect to any vehicle or its contents. Snow removal is the responsibility of the vehicle owner. Any tenant who wishes to rent a parking space or garage must sign a Parking Space or Garage Rental Agreement.

www.socrates.com

© 2005 Socrates Media, LLC
LF255-1 • Rev. 03/05

Exhibit B---001
EXHIBIT 1

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement in duplicate the day and year first written above.

Signed in the presence of:

Witness _W:LLIAM  BODEL_ , Lessee _Wm. Bodel , _ 12-3-16

Witness _LASSANDRAH PRYSIAZAN-KRASS_ Lessor _____ 12-2-16

**NOTICE:** State law establishes rights and obligations for parties to rental agreements. This agreement is required to comply with the Truth in Renting Act or the applicable Landlord Tenant Statute or code of your state. If you have a question about the interpretation of legality of a provision of this agreement, you may want to seek assistance from a lawyer or other qualified person.

_RENTAL  SECURITY  DEPOSIT  PAID  12-2-16_

_$1,300.00_

_W.B.  1-2-17_

_CHPK 1-2-17_

© 2005 Socrates Media, LLC
LF155-1 • Rev. 03/05

www.socrates.com

Exhibit B---002

EXHIBIT 1

John Spain Builders, LLC
General Contracting
48252 Tina Lane
Amherst, OH 44001
Phone: 440-988-2382
Fax: 440-988-2962

## *John Spain*
### BUILDERS, LLC
## *General Contracting*

### *Estimate*
*February 22, 2017*

*Bill Bobel*
*803 West 6th Court*
*Lorain, Ohio*

### *RE:  Fire Restoration/Brief Summary and Cost*

- *$20,278.00* Remove 2nd floor roof and remove and replace all necessary walls
- *$500.00* Partial removal of areas on 1st floor
- *$1,800.00* Glass block replacement
- *$50,374.00* Complete window replacement
- *$17,177.00* Paint, varnish, smoke clean-up
- *$8,600.00* Mold removal
- *$18,500.00* Framing lumber
- *$11,500.00* Complete roof replacement and shingles
- *$26,100.00* Siding removal and replace
- *$1,400.00* Gutters and downspouts
- *$13,285.00* HVAC total replacement including all duct work
- *$23,820.00* Plumbing fixtures and faucet replacement
- *$2,950.00* Exterior door replacement
- *$8,500.00* Interior door/trim replacement
- *$1,175.00* Hot water tank replacement
- *$20,720.00* Complete floor replacement and sub floor where necessary
- *$1,500.00* Mirrors, towel and paper hangers, medicine cabinets
- *$2,692.00* Shelving (Closets)
- *$2,640.00* Cabinets removed, cleaned, and re-installed
- *$19,200.00* Framing labor
- *$17,050.00* Trim Labor
- *$67,285.00* Profit
- *$1,380.00* Debris removal
- *$365.00* Porta John
- *$5,635.00* Equipment and fuel sur charges
- *$550.00* Permits

**Exhibit C---001**
EXHIBIT 1

John Spain Builders, LLC
General Contracting
48252 Tina Lane
Amherst, OH 44001
Phone: 440-988-2382
Fax: 440-988-2962



*Page 2 of 2*

**Exclusions**
- Electrical
- Light fixtures
- Kitchen ceiling replacement
- Removal and cleaning of granite counter top

**Total Estimated Cost**
- $344,980.00

Exhibit C---002

EXHIBIT 1

Exhibit D---001

# 803 WEST 6TH CT  LORAIN, OHIO
## FIRE AND WATER REPAIR ASSESSMENT

### REPAIR/REPLACEMENT WORK KEYED NOTES

1. REPLACE FLOODED 200 AMP SERVICE PANEL AND VERIFY SERVICE ENTRY WIRING NOT DAMAGED BY THE FIRE OR ITS CONTAINMENT
2. REPLACE FLOODED FURNACE UNIT – 50% EFFICIENCY
3. VERIFY THAT THE HOT WATER TANK WAS NOT DAMAGED BY FREEZE / REPLACE IF NECESSARY
4. REPLACE STAINED/RUSTING HVAC DUCTWORK DAMAGED BY WATER
5. DRY OUT AND CLEAN ENTIRE BASEMENT / VERIFY THERE IS NO MOLD
6. REPLACE ALL COPPER PIPE, FITTINGS AND VALVES DAMAGED BY THE FREEZE
7. REPLACE CONDENSING UNIT TO ACCEPT NEW 410A FREON STANDARDS

### REPAIR/REPLACEMENT WORK GENERAL NOTES

REPAIR OR REPLACE ANY CONDUIT, WIRING AND  DEVICES DAMAGED BY THE FIRE OR ITS CONTAINMENT

REPAIR OR REPLACE ANY WATER SUPPLY LINES, FITTINGS AND VALVES DAMAGED BY THE FREEZE



**BASEMENT PLAN**
SCALE 1/4" = 1'

01

EXHIBIT



**NOTE: TIN CEILING OVER PLYWOOD IN KITCHEN AREA**

## FIRST FLOOR PLAN
01  SCALE: 1/4" = 1'   2' 1' 0   2'

# 803 WEST 6TH CT   LORAIN, OHIO
## FIRE  AND  WATER  REPAIR  ASSESSMENT

### REPAIR/REPLACEMENT WORK KEYED NOTES

① REMOVE AND REPLACE ALL CEILINGS IN THIS AREA
② REMOVE AND REPLACE WARPED SUBFLOORING AND FLOOR JOISTS FLOORING IN THIS AREA
③ REMOVE AND REPLACE ALL FIRE, SMOKE OR WATER DAMAGED WALL BOARD / PLASTER AND WOOD TRIM IN THIS AREA
④ REMOVE AND REPLACE WINDOWS DAMAGED BY WATER IN THIS AREA
⑤ REMOVE AND REPLACE WINDOW SEAT DAMAGED BY WATER IN THIS AREA
⑥ CLEAN AND PAINT ALL WALLS AND CEILING
⑦ REMOVE AND REPLACE STAIR CARPET, INSPECT WOOD TREADS AND RISERS AND REPLACE IF DAMAGED BY WATER
⑧ REPLACE ALL KITCHEN APPLIANCES DAMAGED BY WATER

### REPAIR/REPLACEMENT WORK GENERAL NOTES

REPAIR OR REPLACE ANY CONDUIT, WIRING AND  DEVICES DAMAGED BY THE FIRE OR IT'S CONTAINMENT

REPLACE ALL CEILING LIGHTING OR FANS ON FIRST FLOOR

REPAIR OR REPLACE ANY WATER SUPPLY LINES, FITTINGS, VALVES AND FIXTURES  DAMAGED BY THE FREEZE

REMOVE AND REPLACE ALL FLOORING ON FIRST FLOOR LEVEL

PAINT ALL NEW WALLS, CEILINGS AND STAIN ALL NEW FLOORS AND WOOD TRIM THROUGHOUT FIRST FLOOR

REPAIR / REPLACE ALL DOORS DAMAGED BY FIRE, SMOKE OR WATER

Exhibit D—002

DCN: 2220180108321860403411050      Received Date:01/08/2018

**EXHIBIT 1**

DCN: 22201801083218604034110050     Received Date:01/08/2018

Exhibit D—003

# 803 WEST 6TH CT  LORAIN, OHIO

## FIRE AND WATER REPAIR ASSESSMENT

### REPAIR/REPLACEMENT WORK KEYED NOTES

1. REMOVE AND REPLACE ALL ROOF JOISTS, SHEATHING, PAPER AND SHINGLES, REMOVE AND REPLACE ALL FLOOR JOISTS, SUBFLOOR AND FLOORING IN THIS AREA
2. REMOVE AND REPLACE WARPED SUBFLOORING AND FLOOR JOISTS FLOORING IN THIS AREA
3. REMOVE AND REPLACE GLASS BLOCK WINDOWS
4. REMOVE AND REPLACE WINDOWS DAMAGED BY FIRE OR WATER – PELLA ARCHITECTURAL SERIES OR EQUAL
5. REMOVE AND REPLACE JACUZZI SPA
6. REMOVE AND REPLACE VANITY AND CORIAN TOP
7. REMOVE AND REPLACE MILLWORK CABINET
8. THE BACKWALL OF HOME IS NOW BOWED OUT, IT IS SUSPECTED THAT THIS WAS CAUSED BY THE HEAT AND IT SHOULD BE RE-FRAMED AND RE-SIDED TO CORRECT THIS CONDITION
9. VERIFY THE CONDITION OF ROOF FRAMING IN THIS AREA AFTER DEMOLITION AND REPLACE ANY BURNED WOOD FRAMING AND SHEATHING
10. REMOVE AND REPLACE SIDING AND DAMAGED GUTTERS IN THIS AREA
11. REMOVE AND REPLACE ALL FRAMING IN THIS AREA

### REPAIR/REPLACEMENT WORK GENERAL NOTES

ENTIRE SECOND FLOOR LEVEL TO BE DEMOLISHED DOWN TO BARE STUDS, DRYWALLED AND ELECTRICAL WIRING AND DEVICES REPLACED.

REPAIR OR REPLACE ANY WATER SUPPLY LINES, FITTINGS, VALVES AND FIXTURES DAMAGED BY THE FREEZE

REMOVE AND REPLACE ALL FLOORING ON SECOND FLOOR LEVEL

PAINT ALL NEW WALLS, CEILINGS AND STAIN ALL NEW FLOORS AND WOOD TRIM THROUGHOUT SECOND FLOOR

REPAIR / REPLACE ALL DOORS DAMAGED BY FIRE, SMOKE OR WATER

VERIFY THAT DAMAGE HAS NOT OCCURED TO WASTE LINE VENTS IN ATTIC, REPLACE AS REQUIRED

IT IS RECOMMENDED THAT THE ENTIRE ROOF BE RE-SHINGLED DUE TO THE HEAT GENERATED FROM THE FIRE

REPLACE ALL LIGHTING FIXTURES OR FANS ON SECOND FLOOR

### COST ESTIMATE

SECOND FLOOR PLAN

SCALE 1/4"=1'

01

EXHIBIT 1

ENTIRE SECOND FLOOR LEVEL TO BE DEMOLISHED DOWN TO BARE STUDS, DRYWALLED AND ELECTRICAL WIRING AND DEVICES REPLACED

REPAIR OR REPLACE ANY WATER SUPPLY LINES, FITTINGS, VALVES AND FIXTURES DAMAGED BY THE FREEZE

REMOVE AND REPLACE ALL FLOORING ON SECOND FLOOR LEVEL

PAINT ALL NEW WALLS, CEILINGS AND STAIN ALL NEW FLOORS AND WOOD TRIM THROUGHOUT SECOND FLOOR

REPAIR / REPLACE ALL DOORS DAMAGED BY FIRE, SMOKE OR WATER

VERIFY THAT DAMAGE HAS NOT OCCURED TO WASTE LINE VENTS IN ATTIC, REPLACE AS REQUIRED

IT IS RECOMMENDED THAT THE ENTIRE ROOF BE RE-SHINGLED DUE TO THE HEAT GENERATED FROM THE FIRE

REPLACE ALL LIGHTING FIXTURES OR FANS ON SECOND FLOOR

## COST ESTIMATE

GIVEN THE EXTENT OF DAMAGE TO THE STRUCTURE AND INFRASTRUCTURE SYSTEMS AND THE QUALITY OF BOTH ORIGINAL ITEMS AND UPGRADES TO THE HOME, WE WOULD ESTIMATE THE REPLACEMENT VALUE TO BEAS FOLLOWS:

BASEMENT:      817 S.F. @ $20/S.F. – $16,500
FIRST FLOOR:    950 S.F. @ $100/S.F. – $95,000
SECOND FLOOR:  881 S.F. @ $185/S.F. – $163,000

WOLF ❖ MAISON
ARCHITECTURE AND DESIGN

1814 EAST 40TH STREET  PHONE: 216.361.9000
SUITE 3J                FAX: 216.361.0323
CLEVELAND, OHIO 44103   WWW.WOLFMAISON.COM

Exhibit D—004

EXHIBIT 1

 Insurance™

A Liberty Mutual Company

Safeco Insurance Company of Indiana

Mailing Address:
P.O. Box 515097
Los Angeles, CA 90051-5097

Phone:  (800) 332-3226
           (847) 396-7137
Fax:     (888) 268-8840

May 4, 2017

William Bobel
4319 Shore Drive
Lorain, OH 44053

| | |
|---|---|
| Claim Number: | 134102546002 |
| Insured Name: | William Bobel |
| Date of Loss: | December 25, 2016 |
| Policy Number: | OK6518171 |
| Underwriting Company: | Safeco Insurance Company of Indiana |

RE: Supplemental property claim payment

Dear William Bobel,

We have reviewed your supplemental payment request and calculated what we owe you. A check has been sent separately.

Below is a breakdown of the actual cash value of your property, which is what your policy provides. This amount is based on a thorough review of the damages and the facts of the loss.

Dwelling

| | |
|---|---|
| Total Estimate of Damage | $145,967.62 |
| Recoverable Depreciation | $ 23,923.92 |
| Prior Payments | $102,272.05 |
| Deductible | $ 2,500.00 |
| Total Payment | $17,271.65 |

Enclosed is a copy of the statement of loss that further details the history of payments for this claim for your records.

Personal Property

| | |
|---|---|
| Total Replacement Cost | $15,566.51 |
| Recoverable Depreciation | $ |
| Prior Payments | $14,231.98 |
| Deductible | $ |
| Total Payment | $ 1,334.53 |

Enclosed is your contents valuation report that details the payment amount for each claimed item.

To claim the replacement cost under the Full Value Contents provision in your policy, you must replace the stolen item and submit a copy of the receipt within **365 days from the date of loss**. The depreciated amount on each replaced item will be refunded to you in accordance with the Full Value Contents endorsement in your policy.

CA1570 01/16

Exhibit E---001

EXHIBIT 1

After a review of your policy and the facts that have come to our attention, Safeco Insurance Company of Indiana regrets that it is unable to pay for a portion of your claim because your policy does not provide coverage for part of the loss. Our reasons for this partial denial are as follows:

As you are aware, this claim arises from fire. Our investigation revealed that you had moved out of the property prior to the loss as you prepared to rent the property. This property does not qualify as your residence premises, as you had moved into your condo unit prior to the fire. This was in preparation of renting the property. The tenant had not moved into the property yet, as the lease agreement is noted to begin January 1, 2017. Since the property had not been leased to the tenant prior to the loss, loss of rent is not afforded, this is defined further below. Your **SAFECO HOMEOWNERS POLICY (HOM 7030 EP 1/09), COV D - ADDITOINAL LIVING EXPENSE AND LOSS OF RENT** section states in part:

**"COVERAGE D — ADDITIONAL LIVING EXPENSE AND LOSS OF RENT**

**1.** If a loss covered under this Section makes that part of the *residence premises* where you reside Uninhabitable we cover **Additional Living Expense,** meaning the necessary increase in living expenses you incur so that your household can maintain its normal standard of living.

Payment shall be for the shortest time required, not exceeding 24 months, to repair or replace the damage or to permanently relocate.

**2.** If a loss covered under this Section makes that part of the *residence premises* you rent to others or hold for rental uninhabitable, we cover your loss of rent, meaning the rental income to you from that part of the *residence premises* you rent to others at the time of the loss, less any expenses that do not continue while the premises is uninhabitable.

This coverage does not apply to:
a. The *residence premises* or that part of the *insured location* that is not rented or leased to a tenant at the time of the loss; or
b. to any increase in rent or lease payment that occurs after the time of the loss.

Payment shall be for the shortest time required to repair or replace the damage, but not to exceed 24 months.

**POLICY DEFINITIONS**

o. *"Residence premises"* means:
(1) the one, two, three or four family dwelling, used principally as a private residence;
(2) other structures and grounds; or
(3) that part of any other building;
where you reside and which is shown in your Policy Declarations."

According to the terms and conditions of your policy referenced above in **COV D - ADDITIONAL LIVING EXPENSE AND LOSS OF RENT** and the **POLICY DEFINITIONS** we are unable to provide any coverage for additional living expense or loss of rents.

We are willing to reevaluate this decision if you have any new facts or information you believe may affect coverage of your claim. If you have new information, provide it to us in writing at your earliest opportunity.

Page 3
Claim Number 134102546002

Safeco Insurance Company of Indiana may continue to investigate this claim. However, Safeco Insurance Company of Indiana reserves any and all rights and defenses allowed under the policy of insurance and the law. No action taken by Safeco Insurance Company of Indiana, its employees and/or agents, is intended to be or should be considered to be a waiver of any of these rights or defenses under the policy of insurance or the law.

If you have any questions, please contact me directly using the information below.

Your policy limits the time you have to bring an action on your claim. The section below outlines the policy information for Ohio that outlines this timeframe:

**SECTION I - PROPERTY CONDITIONS - Item 8:**
8. Suit Against Us.
No action shall be brought against us unless there has been compliance with the policy provisions and the action is started within one year after the inception of the loss or damage.

I look forward to working with you and quickly resolving your claim.

Sincerely,

Diana Pierce
(847) 396-7137
(800) 332-3226 Ext. 7867137 Fax: (888) 268-8840
diana.pierce@safeco.com

Enclosures: Statement of Loss
Contents Valuation Report (CVR)

CA1570 01/16

Exhibit E---003
EXHIBIT 1

CERTIFIED MAIL

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

9414 7266 9904 2088 2395 13

17ZU 8341 6033

RECEIVED
JAN 0 4 2018
Indianapolis Office Services

17CV194101
SAFECO INSURANCE COMPANY OF INDIANA
350 EAST 96TH ST

INDIANAPOLIS    IN  46240


U.S. POSTAGE ❯❯ PITNEY BOWES

ZIP 44035
02 4W
0000346200 DEC 28 2017
$ 006.56°

**EXHIBIT 1**

17160A REV. 2/10 LPS

https://www.campusship.ups.com/cship/create?ActionOriginPair=default_PrintWindowP...   1/5/2018



LEAH PULTZ
317-581-6635
LIBERTY MUTUAL-INDIANAPOLIS-09
350 E 96TH ST
INDIANAPOLIS IN 46240

2.0 LBS    LTR        1 OF 1

SHIP TO:
SOURSE CORP
20500 BELSHAW
**CARSON  CA 90746-3506**

**CA 906 9-01**

**UPS NEXT DAY AIR SAVER**    1P
TRACKING #: 1Z 441 290 13 9782 3750

BILLING: P/P

Office/Dept N...      006001459

SOURSE
20500 BELSHAW AVE
CARSON CA 90746-3506

P: GRAY        S: 1          I: M9
**0403 – 6990**        X
1Z441290139782          1500
3750

EXHIBIT 1

DCN: 22201801083218604034110050    Received Date:01/08/2018

# LORAIN COUNTY COURT OF COMMON PLEAS
## *LORAIN COUNTY JUSTICE CENTER*
### *225 COURT STREET*
### *ELYRIA, OHIO 44035*

*WILLIAM BOBEL*
*803 6TH CT*
*LORAIN, OH 44052*

*CASE NO. 17CV194101*

*VS.*

TO: *SAFECO INSURANCE COMPANY OF INDIANA*
*350 EAST 96TH ST*
*INDIANAPOLIS, IN 46240*

# S U M M O N S   O N   C O M P L A I N T

*You have been named defendant in a complaint filed in Lorain County Court of Common Pleas by plaintiff(s):*

*WILLIAM BOBEL*
*803 6TH CT*
*LORAIN, OH 44052*

*A copy of the complaint is attached hereto. The name and address of the plaintiff's attorney is:*

*GREGORY E O'BRIEN*
*CAVITCH,FAMILO,DURKIN & FRUTKIN*
*1300 EAST NINTH STREET, 20TH FL*
*CLEVELAND, OH 44114*
*You are hereby summoned and required to serve a copy of your answer to the complaint upon the plaintiff's attorney, or upon the plaintiff, if he has no attorney of record, within* **TWENTY-EIGHT (28) DAYS** *after service of this summons on you, exclusive of the day you receive it. Your answer must* **ALSO** *be filed with this Court within three (3) days after you serve, (delivered or by mail) a copy of your answer on the plaintiff's attorney.*

*If you fail to appear and defend, judgment by default will be rendered against you for the relief demanded in the complaint.*

**TOM ORLANDO**
**CLERK OF COURTS OF COMMON PLEAS**
**LORAIN COUNTY, OHIO**

**12/27/2017**

BY: *[signature]*

**Deputy Clerk**

# *17CV194101*

EXHIBIT 1